148 Mich. App. 171 (1986)
384 N.W.2d 119
In re SARRAS ESTATE
KARRIS
v.
FRUSTAGLIO
Docket No. 80476.
Michigan Court of Appeals.
Decided January 6, 1986.
McDonald, Collins & Marin (by William I. McDonald), for Ernest A. Karras.
Steward, Peterson, Sheridan & Nancarrow (by James B. Steward), for Michael Frustaglio.
Before: D.F. WALSH, P.J., and GRIBBS and SHEPHERD, JJ.
SHEPHERD, J.
Michael Frustaglio (contestant) commenced this action in the Marquette County Probate Court contesting the March 4, 1982, will executed by the decedent, Andrew Sarras (testator). Ernest Karris, proponent and sole beneficiary of the 1982 will, appeals from a jury verdict setting aside the 1982 will as the product of an insane delusion. That verdict effectively gave validity to an earlier will dated November 17, 1976. We reverse and remand for entry of judgment notwithstanding the verdict.
The testator died on April 19, 1982. He had never married, had no siblings, and both parents had predeceased him. After his death the personal representative named in the testator's 1982 will petitioned the probate court for admission of the 1982 will to probate. The 1982 will left all of the testator's property to a friend, the proponent in this action. On June 7, 1982, contestant, a cousin of the testator, filed an action contesting the 1982 will.
Contestant's objections were: 1) the testator lacked testamentary capacity at the time the 1982 will was executed and 2) the will resulted from an insane delusion on the part of the testator that his family did not give him enough attention. Contestant *175 was also the proponent of the 1976 will which distributed the testator's property among his relatives, including the contestant.
Contestant introduced substantial testimony at trial that the testator had a number of serious manic-depressive attacks over the years which were observed by the family and which sometimes resulted in hospitalization. Family members testified that the testator was in a manic phase when he executed the will on March 4, 1982, and that he was hospitalized for the condition a week and a half later.
The jury was given a special verdict form which asked the jury to first determine whether the testator had the testamentary capacity to make the 1982 will and, if so, whether the 1982 will was the result of an insane delusion. The jury found that he did have testamentary capacity but that the will was the result of an insane delusion. Proponent appeals from this verdict.
Proponent argues that the trial court should have granted his motion for a directed verdict or judgment notwithstanding the verdict on the issue of insane delusion. We agree.
The standard for this Court in reviewing a defendant's motion for directed verdict is that the evidence must be viewed in the light most favorable to the plaintiff. If there are material issues of fact upon which reasonable minds might differ, they are properly submitted to the jury. Hall v Citizens Ins Co of America, 141 Mich App 676, 682; 368 NW2d 250 (1985). Otherwise stated, the test is whether, viewing the facts in the light most favorable to the plaintiff, reasonable persons could reach a different conclusion. If so, the question is properly one for the jury. The same standard of review applies where a motion for judgment notwithstanding the verdict has been denied. Jenkins *176 v Southeastern Michigan Chapter, American Red Cross, 141 Mich App 785, 792; 369 NW2d 223 (1985).
In the present case, contestant had the burden of proof to show that the testator was the victim of an insane delusion, that the testator believed supposed facts which have no real existence, that he had no reasonable information or evidence supporting his belief of those supposed facts, and that, but for such belief, he would not have excluded contestant (and other former beneficiaries) from his will. A directed verdict is properly entered in favor of a proponent where a factual basis for the decedent's belief is established at trial. In re Karabatian's Estate, 17 Mich App 541; 170 NW2d 166 (1969).
Here, contestant has claimed that testator was the victim of an insane delusion that his family did not give him enough attention. Proponent argues that at trial eight different relatives testified to facts which would be sufficient for the testator to base his belief in reason:
1. Mary George, testator's aunt, testified that she and another aunt broke a long-standing tradition by not inviting the testator to their monthly potluck-bingo gathering in late February, 1982, because he was in his manic phase and was obnoxious. He did go, but sat alone. She also testified that he left an unpleasant odor in the house after he had been there.
2. Stella Power, another aunt, testified about the friction that developed in 1979 between the testator and his uncle Anthony after the two had lived together.
3. Vito Frustaglio, the testator's uncle, testified that he sold the testator a stereo in mid-February, 1982, which the testator claimed was not working *177 properly, but Frustaglio could find nothing wrong with it.
4. Concetta Maki, an aunt, also testified about the testator's friction with his uncle Anthony in the late 1970's.
5. Joseph Frustaglio testified that he refused to buy raffle tickets from the testator at Ozzie's Bar on March 3, 1982, and that the testator was angry at his refusal.
6. Terese Carlson, an aunt, testified that the testator had been a burden to the family for several years, since his mother died in the mid-1970's, and that he was unpleasant because he was not clean or shaven, but that they never told him that he was a burden.
7. Marian Frustaglio testified that in March, 1982, at Phelps School, she did not sit with the testator at a basketball game in which her husband was playing because she did not see him. She further testified that she had asked him not to smoke cigars in her house, and that she had locked the doors when she was home alone because she did not want the testator coming in when he was in his manic state.
8. Michael Frustaglio testified that for the first few months following the death of the testator's mother, his aunts would go to the family home to clean up for the testator and his uncle Anthony, and that they then stopped doing so and left the testator and his uncle on their own. Frustaglio also testified about the falling-out between the testator and his uncle Anthony, and further testified that the testator was asked by Paula Frustaglio, Michael's wife, not to smoke in their house.
It is for this Court to review the facts presented at trial to determine whether any such facts would be enough for the testator to base his belief in reason. As stated in In re Solomon's Estate, 334 *178 Mich 17; 53 NW2d 597 (1952), an insane delusion invalidating a will exists "`when a person persistently believes supposed facts which have no real existence, and so believes such supposed facts against all evidence and probabilities and without any foundation or reason for the belief, and conducts himself as if such facts actually existed'". Id., 27, quoting from In re Kaven's Estate, 279 Mich 334, 339-340, 272 NW 696 (1937). However, capricious and arbitrary dislikes, unjust suspicions against relatives or mistaken beliefs as to their feelings and designs toward the testator and his property, however visionary, or belief of acts or facts which have any evidential basis, do not constitute insane delusions. In re Solomon's Estate, supra, p 27. In re Karabatian's Estate, supra, p 543, this Court quoted from the In re Solomon's Estate opinion as follows:
"`"An insane delusion exists when a person persistently believes supposed facts which have no real existence, and so believes such supposed facts against all evidence and probabilities and without any foundation or reason for the belief, and conducts himself as if such facts actually existed." * * * If there are any facts, however little evidential force they may possess, upon which the testator may in reason have based his belief, it will not be an insane delusion, though on a consideration of the facts themselves his belief may seem illogical and foundationless to the court; for a will, it is obvious, is not to be overturned merely because the testator has not reasoned correctly.' In re Solomon's Estate (1952), 334 Mich 17, 27, 28."
The Court in In re Solomon's Estate also noted:
"A review of our numerous past decisions on insane delusions clearly indicates that there must be a great deal of proof that the suspicions or belief of a testator are completely unfounded before they can be held to be an insane delusion." 334 Mich 28.
*179 It is thus not for the jury or this Court to substitute its judgment for that of the testator regarding the logic of his belief. A jury may not reject a will merely because the jurors disapprove of the testator's motives or consider his distribution unfair or unreasonable. We need only determine whether there was any evidence presented upon which the testator could have based his belief, however arbitrary it might appear to this Court. If there is any evidence, however slight or inconclusive, which might have a tendency to create the testator's belief that his relatives were not giving him enough attention, then we must conclude that the belief was not an insane delusion.
With this in mind we conclude that the testator's supposed belief that his family was not providing him with enough attention was most probably the result of a mistaken belief such as would not rise to the level of an insane delusion as defined by law, as it was not in fact a belief without any foundation or reason. A directed verdict would have been properly entered here as facts were brought out at trial upon which the testator could have based such a belief in reason.
A great deal of testimony was presented to the effect that the testator was mentally ill in that he suffered from manic-depressive states. However, the jury expressly found that the testator did not lack testamentary capacity. Contestant has not shown how the testator's manic state would discount his belief, which is purported to be an insane delusion, that his family members did not pay enough attention to him. As proponent notes on appeal, this case does not deal with a stated belief of the testator that, for example, one of his family members had tried to kill him or that his relatives had wronged him in some specific way. *180 Rather, the "belief" is an expression of general discontent on the part of the testator with the attention and affection shown him by his family members. The facts listed above, i.e., that the testator was not invited to a traditional family function, that family members discontinued doing his household chores, that the testator may have been discouraged from visiting, etc., appear to be a sufficient factual basis and reason for the testator to have developed a general discontent, however illogical or unreasonable, with his family members. This is not the sort of belief that the case law contemplates in describing an insane delusion, but is rather better put in the category of an arbitrary belief or unjust suspicion against relatives or a mistaken belief. See In re Solomon's Estate, supra, p 27.
79 Am Jur 2d, Wills, § 95 states:
"As a general rule, if a testator's antipathy toward a relative is attributable to some action by the relative adverse to the testator's interest, it cannot be found to have been an insane delusion or monomania. Thus, as a general rule, insane delusion or monomania cannot be predicated on a testator's general antipathy toward a relative or spouse if his attitude can be attributed to a course of quarrels or controversies between them. A similar rule applies where some ground for the testator's antipathy appears in the failure of the relative or relatives to sustain proper relations of affection or interest toward him. Indeed, a testator's belief that his immediate relatives have not manifested any affection for or gratitude to him cannot ordinarily be considered an insane delusion, since such conclusion is to a great extent purely a matter of personal opinion. A resentment against members of his family does not constitute an insane delusion on the part of the testator where it is based upon remonstrances made by such members against certain conduct of the testator. Not infrequently the maker of a will is suspicious of his relatives and acts under the belief that they intend him harm, and *181 while a belief of this kind, wholly without foundation, may be evidence of an insane delusion, it is otherwise if there is some substantial evidence to support such belief." (Footnotes omitted.)
The probate court appears to have arrived at its conclusion without giving sufficient weight to the necessity that contestant carry his burden of proof of showing that there were no facts upon which the testator could have based his belief. Rather, the probate court appears to have viewed the proponent's motion for directed verdict as testing whether proponent had carried a burden of proof to show that the testator did not have an insane delusion. We conclude that the probate court erred in failing to grant a directed verdict based on the fact that the belief here purported to be an insane delusion appears only to have been a possibly mistaken belief as to the feelings or designs of his family. At least minimal facts were presented at the trial level to support such a belief, even if it might appear to this Court to be arbitrary and without considerable foundation. In re Solomon's Estate, supra. Accordingly, we reverse the jury's verdict on this issue alone.
Proponent's remaining issues are without merit and require only brief discussion. Proponent first contends that he was prejudiced by several minor deviations from the then-proposed Standard Jury Instructions. These departures are so slight as not to change the overall meaning of the instructions. Moreover, the instructions given as a whole are a correct statement of the law. In any event, our decision in favor of proponent renders the issue moot.
Proponent next argues that the trial court erred in allowing contestant attorney fees as an expense of administration of the estate. As contestant notes *182 in his brief, early in the proceedings, contestant, as proponent of the 1976 will, filed a petition with the court requesting authority to retain counsel to sustain the 1976 will with the expense to be charged to the estate. Section 148 of the Revised Probate Code, MCL 700.148; MSA 27.5148, provides that if a will is contested, the personal representative or a proponent "may petition the court for authorization to retain counsel for the purpose of sustaining the will; and the reasonable expense of counsel and of procuring evidence to sustain the will shall be a proper charge against the estate". Although the issue of whether a proponent of an earlier will may recover expenses is one of first impression, we conclude that the statutory language is broad enough to allow this result. The allowance or disallowance of such expenses by a will proponent is not contingent upon whether or not that proponent is ultimately successful. Under the close circumstances of this case, we cannot conclude that the trial court abused its discretion in allowing attorney fees to contestant.
On cross-appeal, contestant argues that the trial court erred in awarding proponent attorney fees in part because proponent did not petition the trial court for authorization to retain counsel as provided for by MCL 700.148; MSA 27.5148, quoted above. The section merely states that a proponent "may" petition the court for authorization to retain counsel. It does not prohibit a proponent, who has not petitioned for authorization in advance, from ever recovering attorney fees. We read the statement as merely allowing the proponent to petition for authorization in advance so that expenses can be charged against the estate as they are incurred. In any event, since proponent is the sole beneficiary under the 1982 will, our decision renders this issue moot.
*183 We affirm on the issue of attorney fees. We reverse and remand to the probate court for entry of judgment notwithstanding the verdict in favor of proponent of the 1982 will on the issue of insane delusion.