884 P.2d 527

**Patricio LUCERO, Petitioner/Appellant,**

**v.**

**Aristeo C. LUCERO, Jr., Cross–Petitioner/Appellee.**

**In the Matter of the ESTATE OF Carolina M. LUCERO, Deceased.**

**No. 14554.**

Court of Appeals of New Mexico.

Sept. 21, 1994.

Stevan J. Schoen, Albuquerque, for petitioner/appellant.

Roberto C. Armijo, Civerolo, Wolf, Gralow & Hill, P.A., Albuquerque, for cross-petitioner/appellee.

*OPINION*

BLACK, Judge.

Carolina M. Lucero executed a will in July 1984. In December 1986, one of Mrs. Lucero's sons, Aristeo Lucero (Appellee), was appointed conservator of her estate by virtue of Mrs. Lucero's advanced age and mental deficiencies. Sometime thereafter Mrs. Lucero told Appellee she wanted to make another will. Appellee arranged for an attorney to meet with his mother, and, on August 12, 1988, Mrs. Lucero executed a new will. Mrs. Lucero died on November 25, 1990, at the age of 95.

After her death, another of Mrs. Lucero's sons, Patricio Lucero (Appellant), offered her 1984 will for probate. Her other seven children, including Appellee, were the proponents of the 1988 will. The district court found that, after appointment of the conservator in December 1986, there was a rebuttable presumption that Mrs. Lucero lacked testamentary capacity. However, after hearing the testimony of numerous witnesses who observed Mrs. Lucero on and around August 12, 1988, and various medical experts who testified based on Mrs. Lucero's medical records, the district court concluded that, at the time of execution of the 1988 will, Mrs. Lucero "was enjoying a period of lucid interval" and that she "was capable of understanding, in a reasonable manner, the nature and effect of the act of executing her Last Will and Testament." The district court admitted the 1988 will to probate. Patricio Lucero appeals. We affirm.

## I. THE EFFECT OF THE CONSERVATORSHIP

Like the probate of estates, conservatorships are governed by New Mexico's adoption of the Uniform Probate Code (UPC), NMSA 1978, Sections 45-1-101 through 45-7-522 (Repl.Pamp.1993). Appellant argues that the UPC "provides that any existing testamentary plan of a protected person must be 'preserved'." Appellant contends further that if the conservator believes the protected person legitimately wants to change her will, the conservator must either: (1) petition to terminate the conservatorship under Section 45-5-430; or (2) seek instruction from the appointing court pursuant to Section 45-5-416(B). While either of these may be a legitimate procedure, neither is required by the UPC before a person whose property is under a conservatorship is entitled to execute a will.

The UPC distinguishes between a guardian, who is appointed to care for the incompetent person, and the conservator, who is appointed to manage the property of one who is unable to manage their assets. *Compare* § 45-5-312 (general powers and duties of the guardian) *with* § 45-5-424 (powers of a conservator in administration); *see also In re Estate of Gardner*, 114 N.M. 793, 799, 845 P.2d 1247, 1253 (Ct.App.1992) ("A guardian has only care, custody, or control of the person.... A conservator, on the other hand, is defined as 'a person who is appointed by a court to manage the property or financial affairs or both of an incapacitated person[.]'" (Citations omitted.)), *cert. denied* (Jan. 22, 1993). The UPC is careful in separating the "disability" that is the basis for conservatorship from the "incapacity" that necessitates guardianship. John H. Langbein, *Living Probate: The Conservatorship Model*, 77 Mich.L.Rev. 63, 82 (1978). The UPC itself specifically provides that an order determining that there is a basis for the appointment of a temporary conservator "shall not be evidence of incapacity." Section 45-5-408(D). The mental capacity of the disabled person was thus intentionally left open for future litigation, often postmortem. *See* Richard W. Effland, *Caring for the Elderly Under the Uniform Probate Code*, 17

Ariz.L.Rev. 373, 398 (1975) [hereinafter Effland]. Therefore, nothing in the UPC prohibited Mrs. Lucero from executing the 1988 will merely because Appellee was appointed to be the conservator of her property in 1986. *Cf. Lee v. Lee,* 337 So.2d 713, 715 (Miss.1976) (conservatorship did not affect testamentary capacity at common law).

## II. *TESTAMENTARY CAPACITY*

Appellant next argues that the finding of the district court that Mrs. Lucero had sufficient testamentary capacity to execute a will in August 1988 is not supported by substantial evidence. We disagree.

■ Mrs. Lucero was diagnosed as suffering from senile dementia and cortical atrophy prior to the 1986 conservatorship. Because of these conditions and her advanced age, the district court found that her "property ... may be better protected if a Conservator is appointed[ ]" and named Appellee to serve in that position.

In spite of her medical diagnosis, Mrs. Lucero enjoyed numerous lucid intervals. In July 1988 Mrs. Lucero attended a branding at the neighboring ranch owned by her daughter, Frances Marquez. Mrs. Lucero participated in the activities and engaged in normal conversations dealing with ranching. The testimony indicated that, although her mental status did vary, Mrs. Lucero visited with family members in person and by telephone both prior to and after the time that she executed her will in August 1988, and at such times she recognized family members and engaged in appropriate conversations.

During the summer of 1988, Mrs. Lucero informed Appellee that she wanted to make a will. Appellee contacted a Las Vegas attorney, Roberto L. Armijo, to relay Mrs. Lucero's desire to make a will and to arrange an appointment. Mr. Armijo was a licensed attorney experienced in the preparation of wills. Prior to meeting with Mrs. Lucero, Mr. Armijo prepared a handwritten list of information he believed to be relevant to the upcoming interview. On July 12, 1988, Mr. Armijo came to the Lucero ranch and spent the better part of one hour in private conversation with Mrs. Lucero. During the interview, Mr. Armijo discussed with Mrs. Lucero her children, the nature of her property and estate, and her wishes regarding her will. He testified that he formed an opinion that Mrs. Lucero knew what she was doing and was competent to make a will at that time. Mr. Armijo explained this meant that she knew what it meant to make a will; recognized the objects of her bounty, namely, her children; and was aware of the nature of her property.

Antoinette Pulcini, a witness to the execution of the 1988 will, testified that she was present on August 12 while Mr. Armijo explained and discussed the will with Mrs. Lucero. Mrs. Pulcini observed the discussions and testified it was her opinion that Mrs. Lucero understood what she was doing in executing her will.

Finally, Appellee also called a board-certified psychiatrist who reviewed Mrs. Lucero's medical records and testified that (1) he was familiar with the standard of competency necessary to execute a will; (2) Mrs. Lucero experienced lucid intervals; and (3) it was his opinion Mrs. Lucero was probably competent during her conference with Mr. Armijo and at the time she executed her will.

■ In order to prove testamentary capacity, evidence must be introduced that the testatrix had knowledge of (1) the meaning of executing a will; (2) the extent and character of her estate; and (3) the natural objects of her bounty. *In re Estate of Kimble,* 117 N.M. 258, 261, 871 P.2d 22, 25 (Ct.App.1994); *In re Will of Greig,* 92 N.M. 561, 562, 591 P.2d 1158, 1159 (1979). Numerous courts interpreting the UPC have found that generally senile, confused, or even mentally ill testators may possess sufficient capacity to execute a will during lucid moments. *See, e.g., In re Estate of Sarras,* 148 Mich.App. 171, 384 N.W.2d 119, 122 (1986); *In re Estate of Olsen,* 357 N.W.2d 407, 411 (Minn.Ct.App. 1984), *review denied* (Feb. 27, 1985); *Evans v. Liston,* 116 Ariz. 218, 568 P.2d 1116, 1117 (Ct.App.1977), *review denied* (Sept. 13, 1977); *see also* Effland, *supra,* at 400 ("If an elderly person is mentally alert on some days and not on others, he may not be capable of continually managing his property, but on good days he could still make a will." (Foot-

note omitted.)). The above testimony was substantial evidence on each of the required elements of testamentary capacity.

■ Appellant points to testimony of Sadie Saiz, Mrs. Lucero's housekeeper, that, in her opinion, Mrs. Lucero was mentally disturbed and probably unable to make a will in August 1988. There is no evidence, however, that Ms. Saiz understood the criteria for the mental capacity necessary to execute a will. Appellant also relies on the testimony of two physicians, who testified exclusively based on their posthumous examination of Mrs. Lucero's medical records, that in their opinion it was unlikely Mrs. Lucero was able to understand she was making a will in August 1988. A trial court is not obliged to reject lay testimony of competence of a testator despite medical testimony to the contrary. *In re Estate of Hammermann*, 387 So.2d 409, 411 (Fla.Dist.Ct.App.1980); *see also In re Estate of Thorpe*, 152 Ariz. 341, 732 P.2d 571, 576–77 (1986) (forensic psychiatrist's opinion that decedent lacked testamentary capacity, based entirely on medical records, lacked sufficient evidentiary foundation), *review denied* (Feb. 13, 1987). Moreover, the fact that there is other evidence upon which the trial court could have reached a different conclusion does not make the trial court's finding erroneous. *Jay Walton Enters., Inc. v. Rio Grande Oil Co.*, 106 N.M. 55, 60, 738 P.2d 927, 932 (Ct.App.), *cert. denied*, 106 N.M. 7, 738 P.2d 125 (1987).

### III.  *FIDUCIARY DUTY*

■ Appellant argues correctly that when Appellee was appointed as conservator of Mrs. Lucero's property, the appointment carried with it fiduciary obligations. *See* § 45–5–417. It is also true that the conservator must avoid conflicts of interest and acts as a trustee of the property. *See In re Estate of Gardner*, 114 N.M. at 800, 845 P.2d at 1254. However, it does not follow, as Appellant argues, that because the conservator is appointed by the district court he becomes an officer of the court. *See* Effland, *supra*, at 378. Nor does it follow, as Appellant concludes, that "[b]y arranging for Carolina Lucero to execute a new Will containing terms giving greater benefits to [Appellee],

he breached his fiduciary duties inherent in such situations."

In support of these conclusions, Appellant relies upon the concurring opinion of Judge Hernandez in *Huey v. Lente*, 85 N.M. 585, 592–97, 514 P.2d 1081, 1088–93 (Ct.App.), *rev'd on other grounds*, 85 N.M. 597, 514 P.2d 1093 (1973) (specifically adopting Judge Hernandez's special concurrence). However, since *Huey* was a proceeding dealing with the notice necessary for termination of parental rights, we are unable to understand how that decision defines the fiduciary duty of a conservator in the situation where the disabled person wishes to execute a revised will. Therefore, we once again turn to the UPC and cases decided thereunder for guidance.

The fiduciary's duty of loyalty is to the disabled person, and he must avoid conflicts of interest involving that person's estate. Effland, *supra*, at 395. The UPC delineates several particular conflicts which must be avoided. Specifically, Section 45–5–422 provides:

Any sale or encumbrance to a conservator, his spouse, agent or attorney, or to any corporation or trust in which he has a substantial beneficial interest, or any transaction which is affected by a substantial conflict of interest is voidable unless the transaction is approved by the court after notice to interested persons and others as directed by the court.

This provision speaks in general terms of "[a]ny sale or encumbrance to a conservator" and does not speak directly to transfers by will or changes in an estate plan. In the *Uniform Probate Code Practice Manual*, however, Professor Wellman rejects Appellant's argument that the conservator is prohibited from facilitating execution of a new will or estate plan where the protected person has sufficient mental capacity:

The Code does not, however, prohibit the court or the conservator from taking actions that would affect the estate plan set up by the protected person before he became disabled. If it is an old plan and circumstances have changed substantially, it may be appropriate to disregard or override it. If the protected person's disability

does not prevent his expressing his own wishes (*e.g.,* a convict who is fully competent mentally but cannot manage his property because of loss of civil rights), it may be appropriate to abrogate his old estate plan and establish a new one by setting up a trust.

2 *Uniform Probate Code Practice Manual* 536 (Richard V. Wellman ed., 2d ed. 1977).

■ In the present case, the district court found the situation described by Professor Wellman, i.e., at the time of the creation and execution of her second will, Mrs. Lucero's disability did not prevent her from expressing her own wishes. It logically follows that if the disabled person possesses sufficient capacity to execute a will, she should be able to devise her property to whomever she pleases. *See In re Estate of Aune,* 478 N.W.2d 561, 565 (N.D.1991); *In re Estate of Sarras,* 384 N.W.2d at 121–22. Unless Appellant can show that the conservator abused his position by fraud or undue influence, the testamentary devise should not be voided.

## IV. *UNDUE INFLUENCE*

■ Contestants of a will have the burden of establishing undue influence. Section 45–3–407. In the present case, Appellant undoubtedly proved Appellee occupied a fiduciary relationship with Mrs. Lucero, but Appellant proved little else. Evidence that a beneficiary had a confidential relationship with the testatrix is sufficient to raise a presumption of undue influence only if other suspicious circumstances are shown. *In re Estate of Gonzales,* 108 N.M. 583, 585, 775 P.2d 1300, 1302 (Ct.App.1988), *cert. quashed,* 108 N.M. 197, 769 P.2d 731 (1989).

■ Appellant's claim of undue influence would appear to be based upon the notion that, to the extent that Mrs. Lucero's actions in executing her 1988 will invalidated the 1984 will, an undue benefit was bestowed upon Appellee. However, there was no evidence presented that Appellee knew of the 1984 will or its terms. Appellee did not tell Mr. Armijo that Mrs. Lucero wanted to change her will; rather, he said that she wanted to make a will. There was also no evidence to support any further involvement in the creation of the will or its terms beyond Appellee facilitating his mother's meetings with Mr. Armijo.

■ Appellant argues that he "proved the existence of" mental weakness and that the district court recognized such weakness. We disagree. Appellant's experts concluded from a posthumous examination of Testator's medical records that she suffered from senile dementia and cortical atrophy, and the district court's findings recognize this fact. However, the district court also found that "at the time of execution of said Last Will and Testament, the decedent was enjoying a period of lucid interval" and "she was capable of understanding, in a reasonable manner, the nature and effect of the act of executing her Last Will and Testament." It is not the testatrix's general mental capacity that is critical, but rather the condition of her mind at the time she executed the will. *In re Estate of Stanton,* 472 N.W.2d 741, 746 (N.D. 1991); *Coppock v. Carlson,* 547 So.2d 946, 947 (Fla.Dist.Ct.App.1989), *review denied,* 558 So.2d 17 (1990).

■ Appellant also relies upon Mrs. Lucero's old age and poor health to establish the suspicious circumstances necessary to sustain a prima facie case of undue influence. However, old age and poor health alone do not rise to the level of suspicious circumstances. *Doughty v. Morris,* 117 N.M. 284, 289, 871 P.2d 380, 385 (Ct.App.1994). What must be shown is that Decedent's old age or poor health affected her mental ability in such a way as to make her susceptible to undue influence. *Id.* This record contains no evidence of such a link and, to the contrary, the persons who saw Mrs. Lucero at or about the time of the execution of the will testified she engaged in normal discourse with all her children.

In *In re Estate of Gonzales,* this Court rejected a claim of undue influence on facts similar to those advanced by Appellant. In the *Gonzales* case, the proponent of the will was the grandson of the decedent. The decedent's daughter challenged the will, arguing that the decedent was old, in poor health, and had little understanding of English. She further argued the decedent had a confidential relationship with the proponent, who was

not only present but was a witness on the will. In overruling the district court's decision that such evidence established a prima facie case of undue influence, this Court said:

> The trial court's finding that a confidential relationship existed between decedent and [the proponent] is not sufficient to support a presumption of undue influence without finding suspicious circumstances. [The contestant] argues that decedent's age, health, inability to read, and poor understanding of English, and [the proponent's] presence at the execution of the will are sufficient suspicious circumstances to find that a prima facie case of undue influence was made. We disagree.

108 N.M. at 585, 775 P.2d at 1302 (citations omitted). We then went on to consider each of the alleged suspicious circumstances, several of which are also relevant to resolution of the present case:

> No New Mexico case has based a presumption of undue influence on the fact that the testator was elderly without evidence that the testator's age had affected his or her mental ability. However, in this case, the trial court specifically found that decedent was mentally alert. Similarly, poor health and the inability to read, without a showing of its effect on a testator's mental ability, are not sufficient to deny probate of the testator's will. In [*In re Will of Ferrill*, 97 N.M. 383, 640 P.2d 489 (Ct.App.1981), *cert. quashed*, 98 N.M. 51, 644 P.2d 1040 (1982) ], for example, a doctor testified that the testator could have been easily influenced because she suffered from pain and lack of oxygen. There was no such finding here.

108 N.M. at 585–86, 775 P.2d at 1302–03.

It is fundamental that evidence must be adduced to support each element necessary to support a claim. *In re Estate of Kimble*, 117 N.M. at 260, 871 P.2d at 24. In the present case, Appellant failed to prove any of the alleged suspicious circumstances affected Mrs. Lucero's decision to divide her property among her eight living children, and a directed verdict was therefore appropriate. *See id.*

## V. *ATTORNEY'S FEES*

■ Following trial, both Appellant's and Appellee's attorneys applied to the district court for attorney's fees. The district court awarded attorney's fees to Appellee. However, while finding Appellant's attorney's fees "fair and reasonable," the district court declined to award Appellant fees. Appellant argues he should receive attorney's fees for filing and attempting to probate the 1984 will. *See* § 45–3–720. The UPC should not be construed so as to permit one heir or devisee to finance their lawsuit against another devisee out of the funds of the estate. *In re Estate of Kesting*, 220 Neb. 524, 371 N.W.2d 107, 109 (1985) (per curiam).

■ To charge attorney's fees against an estate under Section 45–3–720, therefore, they must be for services benefitting the estate. *In re Estate of Prichard*, 164 Mich. App. 82, 416 N.W.2d 331, 333 (per curiam), *appeal denied* (Dec. 30, 1987); *Goldworn v. Estate of Day*, 452 So.2d 659, 660 (Fla.Dist. Ct.App.1984). When the fees arise from actions which do not benefit the estate but cause prolonged litigation for the benefit of one person rather than the estate, they are not justified. *In re Estate of Simon*, 549 So.2d 210, 213 (Fla.Dist.Ct.App.1989) (per curiam), *review denied*, 560 So.2d 788 (1990). While it is true Appellant defended the 1984 will, his efforts were unsuccessful and did not ultimately benefit the estate. We find that the district court did not abuse its discretion in denying Appellant's attorney's fees. *See In re Estate of Gardner*, 114 N.M. at 804, 845 P.2d at 1258.

## VI. *CONCLUSION*

The UPC specifically provides that the appointment of a temporary conservator shall not be evidence of incapacity. In the present case the district court found the record and findings in Mrs. Lucero's conservatorship proceedings created a rebuttable presumption that she lacked testamentary capacity. However, the district court also found that presumption of a lack of testamentary capacity was overcome by "clear and convincing evidence that the decedent knew and recognized her issue, understood and acknowledged the general nature, character and ex-

tent of her estate and specifically requested the preparation of the Last Will and Testament at issue herein." There is substantial evidence in the record to support this finding.

While the appointment undoubtedly carries fiduciary obligations and a conservator must avoid conflicts of interest, the UPC does not automatically void any testamentary devise to a conservator made during the conservatorship. Rather, such a devise need only be set aside if the decedent is shown to have been incompetent at the execution of the will or induced into signing by fraud, undue influence, or coercion. Here, however, Appellant failed to introduce evidence the 1988 will resulted from suspicious circumstances sufficient to support a finding of undue influence.

Since the 1984 will was not probated and Appellant's actions did not enlarge the estate, the district court properly denied Appellant attorney's fees.

The order admitting the 1988 will to probate, ordering Appellee appointed personal representative, and granting attorney's fees to Appellee, but not to Appellant, is affirmed.

IT IS SO ORDERED.

MINZNER, C.J., and ALARID, J., concur.