837 P.2d 1373

**In the Matter of the Estate of Billie Reid NEWALLA, Deceased.**

**No. 12813.**

Court of Appeals of New Mexico.

July 21, 1992.

Thomas R. Figart, Law Systems of Las Cruces, P.A., Las Cruces, for appellant Mikel Travis Vance.

John E. Keithly, Keithly & English, Anthony, for appellee Leutisha Potter.

## OPINION

HARTZ, Judge.

The district court distributed to Leutisha Potter all of the assets of the estate of Billie Reid Newalla. Mikel Vance, Newalla's grandson, appeals from the district court's denial of (1) his Motion to Enforce Settlement Agreement and (2) his motion to set aside a district court order admitting Newalla's will to probate. We affirm the district court. We hold that the district court's order denying Vance's Motion to Enforce Settlement Agreement was a final order from which Vance did not file a timely appeal. We also hold that the district court did not err in denying Vance's motion to set aside its prior order admitting Newalla's will to probate.

## I. BACKGROUND

Newalla died on May 20, 1988. That same day, Potter petitioned to be appointed special administrator of the estate and was so appointed. On June 21, 1988, Potter filed a petition requesting (a) formal probate of a will executed by Newalla on October 21, 1987 (the "Will"), (b) an order determining the heirs of the decedent, and (c) her formal appointment as personal representative of the estate. The Will provided that Vance would receive all of Newalla's assets unless he was married to or living with Deborah Cornett, in which case Potter would be the sole heir. Vance has not disputed that he was married to and living with Deborah Cornett at the time of Newalla's death.

In a motion filed on January 23, 1990, Potter repeated her request for a formal declaration that the Will was valid and that the court determine Newalla's heirs. Vance filed a formal objection to the Will on April 9, 1990. On May 22, 1990, Potter filed a Motion for Summary Judgment with respect to the validity of the Will and the determination of Newalla's heirs.

On May 29, 1990, Vance filed his Motion to Enforce Settlement Agreement. Vance's motion does not set forth the terms of the alleged settlement agreement, but the alleged terms appear to be that Potter would release any claims under the Will for $1500, Potter would resign as special administrator of the estate, and Potter would not be held liable for any actions she took as special administrator.

On July 3, 1990, the district court ordered that the Will be formally probated, appointed Potter as personal representative of the estate, and determined that Potter was the sole heir and devisee of Newalla. The court "reserved for further consideration" Vance's Motion to Enforce Settlement Agreement.

On September 5, 1990, Potter petitioned for an order of complete settlement of the estate. The following day the court set a hearing on the petition for October 2, 1990. One week later Vance filed an objection to that petition. The objection contended that the "conditions in the dispository provisions" of the will were contrary to public policy, invalid and unenforceable. On September 18, 1990, the district court filed its Findings of Fact and Conclusions of Law with respect to the alleged settlement agreement, and on October 2 it filed its Order denying the Motion to Enforce Settlement Agreement. Also on October 2, Vance filed a motion to set aside the order of July 3, 1990, which had admitted the Will to probate and appointed Potter as personal representative of the estate. A one-page memorandum in support of the motion contended that the provision disinheriting Vance if he was married to Deborah Cornett was void as against public policy because it tended to induce or bring about a separation or divorce. On October 31, 1990, the district court denied the motion to set aside the July 3 order on the ground that it was "not timely and ha[d] not been put on the Court's docket for consideration, with prior notice to opposing counsel, and should not be entertained." That same day, the district court filed its

order of complete settlement of the estate, which distributed the estate's assets to Potter. On November 29, 1990, Vance filed a notice of appeal from the October 31, 1990, order of complete settlement and a separate notice of appeal from the October 31, 1990, order denying his motion to set aside the July order.

## II. MOTION TO ENFORCE SETTLEMENT AGREEMENT

We first address whether Vance filed a timely appeal from the district court order denying his Motion to Enforce Settlement Agreement. The order was filed on October 2, 1990. The notice of appeal was filed on November 29, 1990. If the order was a final order, then the time for appeal had expired because SCRA 1986, 12–201(A) requires that the notice of appeal be filed within 30 days after the filing of the order appealed from.

■ In recent years the rule that has guided this court's determination of whether an order is final has been the rule that an order or judgment is not final "unless all issues of law and of fact necessary to be determined have been determined, and the case has been completely disposed of to the extent the court has power to dispose of it." *Clancy v. Gooding*, 98 N.M. 252, 254, 647 P.2d 885, 887 (Ct.App.1982); *see Watson v. Blakely*, 106 N.M. 687, 748 P.2d 984 (Ct.App.1987) (judgment not final, in part because attorneys' fees not resolved), *overruled in part by Kelly Inn. No. 102 v. Kapnison*, 113 N.M. 231, 824 P.2d 1033 (1992); *In re Estate of Foster*, 102 N.M. 707, 712–13, 699 P.2d 638, 643–44 (Ct.App. 1985) (order in probate case not final because further proceedings were necessary).

Although agreeing with this rule as a general proposition, our supreme court has recently emphasized that " 'finality' is to be given a practical, rather than a technical, construction." *Kelly Inn*, 113 N.M. at 236, 824 P.2d at 1038. In that case the district court had entered a judgment that attorney's fees were recoverable but had not

determined the amount of those fees to be awarded. The supreme court held that the judgment was nevertheless final and appealable. The court cited with approval several precedents in which a judgment was held to be final even though further action in the litigation was contemplated. For example, in *Sacramento Valley Irrigation Co. v. Lee*, 15 N.M. 567, 113 P. 834 (1910), the court held that a decree appointing a receiver for a corporation was a final, appealable order although the corporation's assets would need to be distributed in further proceedings. In *Cantrell v. Curnutt*, 80 N.M. 519, 458 P.2d 594 (1969), a judgment was held final when it adjudicated all claims between the partners and the partnership and between the partners themselves, although it would still be necessary to conduct proceedings to sell partnership assets and apply the proceeds. In *Speckner v. Riebold*, 86 N.M. 275, 523 P.2d 10 (1974), the court held that the pendency of a judicial sale did not affect the finality of a judgment declaring rights in mortgaged premises. *Kelly Inn* summarized by setting forth the guideline that when "a judgment declares the rights and liabilities of the parties to the underlying controversy, a question remaining to be decided thereafter will not prevent the judgment from being final if resolution of that question will not alter the judgment or moot or revise decisions embodied therein." 113 N.M. at 238, 824 P.2d at 1040.

We now examine the implications of this law in the context of formal proceedings under the New Mexico Probate Code, NMSA §§ 45–1–101 to 45–3–1302 (Repl. Pamp.1989). The New Mexico Probate Code closely follows the Uniform Probate Code. Under our Probate Code, intervention by the court in the estate may be quite limited.

After securing letters, a personal representative whether acting as executor under a probated will, or as an administrator in intestacy, becomes in effect a statutory trustee. The Code gives him the duty and the necessary powers and

protections to permit him to accomplish the entire job of collecting assets, paying debts, and selling land or intangibles as needed to raise necessary cash and distributing the estate to the successor. If desired, all of these steps can be handled without further court orders. Again, however, isolated adjudications to answer particular questions or general orders settling accounts are available as needed.

Richard V. Wellman, *The Uniform Probate Code: Blueprint for Reform in the 70's*, 2 Conn.L.Rev. 453, 492–93 (1970) (footnotes omitted). Indeed, after a will has been admitted to probate and the personal representative appointed, the estate may be administered and closed without any further court order. Under Section 45–3–1003, the personal representative may simply file a verified closing statement describing compliance with the requirements of the Probate Code; the appointment of the personal representative then terminates if there are no proceedings pending in district court one year after the closing statement is filed.

Of course, not every estate will be administered and closed so smoothly. The personal representative may seek the assistance of the district court, as may one who is challenging the personal representative. For example, claims of creditors may be decided by the district court upon the petition of the personal representative or a claimant. § 45–3–806(B). The strictest type of judicial oversight is provided by supervised administration, which is defined in the code as "a single in rem proceeding to secure complete administration and settlement of a decedent's estate under the continuing authority of the district court which extends until entry of an order approving distribution of the estate and discharging the personal representative or other order terminating the proceeding." § 45–3–501(A). Any interested person may petition the district court for supervised administration. § 45–3–502(A). Under supervised administration, the personal representative has no "power to make any distri-

bution of the estate without prior order of the district court." § 45–3–504.

Even if there are no disputes after the will is formally probated and the personal representative formally appointed, the personal representative may decide to close the estate by petitioning for an order of complete settlement of the estate, rather than by simply filing a verified statement and waiting one year. § 45–3–1001(A). After such a petition for an order of complete settlement, the district court, after proper notice and a hearing, may direct or approve distribution of the estate and discharge the personal representative from further claims or demands. § 45–3–1001(C).

One striking feature of the procedures established by the Probate Code is that, in the absence of supervised administration, one cannot be certain whether any particular order entered in the probate case—such as an order admitting a will to probate or an order determining the validity of a creditor's claim—will be followed by another order regarding the estate. As already noted, it is possible to close the estate with no order being entered after the will is admitted to probate and the personal representative is appointed. Perhaps there will be a later order regarding a creditor's claim; perhaps the personal representative will petition for an order of complete settlement of the estate. But perhaps not. If an order is not final and appealable until the last order entered concerning the estate, one often will not be able to know with any degree of certainty at the time an order is entered whether the order is final and appealable, because one cannot predict whether further orders will be sought. Moreover, as a practical matter, there may be no real relationship between two proceedings regarding the same estate—for example, claims by two distinct creditors against the estate—so there is no reason why in general the finality of an order in one proceeding should be dependent upon progress in the other.

■ The Probate Code deals with this concern by treating each petition as insti-

tuting a separate action. Section 45–3–107 states, "Unless supervised administration ... is involved, each proceeding before the district court or probate court is independent of any other proceeding involving the same estate." The official comment to the comparable provision of the Uniform Probate Code adds, "[T]he scope of the proceeding if not otherwise prescribed by the Code is framed by the petition." Comment, Uniform Probate Code § 3–107 (1983). Thus, the Probate Code teaches that as a practical matter each petition in a probate file should ordinarily be considered as initiating an independent proceeding, so that an order disposing of the matters raised in the petition should be considered a final, appealable order. Failure to permit appeal of such orders would often compel the probate proceedings "to go forward under a cloud of uncertainty that would seriously impair the personal representative's efforts to administer the estate." *Estate of Christensen v. Christensen*, 655 P.2d 646, 648 (Utah 1982). The Chief Reporter of the Uniform Probate Code has indicated that one purpose of the Code is to avoid the result under the Model Probate Code that no order in a probate case was final until there had been full administration and closing of the estate. *See* Wellman, *supra*, at 464–65, especially n. 47. To hold that orders terminating separate proceedings are final orders is to give finality "a practical, rather than a technical, construction." *Kelly Inn*, 113 N.M. at 236, 824 P.2d at 1038.

■ The one difficulty with this approach is determining the boundaries of a "proceeding." As noted above, the official commentary to Section 3–107 of the Uniform Probate Code states the general proposition that "the scope of the proceeding ... is framed by the petition." The Probate Code defines "petition" as "a written request to the district court for an order after notice." § 45–1–201(a)(30). One might conclude that a party could carve out an issue from an ongoing proceeding by simply filing a "petition" seeking relief

with respect to that issue. For example, say a party to a dispute over whether a will should be admitted to probate has a discovery dispute with the opposing party and files a "petition to compel discovery." Does the "petition" initiate an independent proceeding so that the district court's order regarding discovery becomes a final, appealable order? We think not. We read the official commentary to Section 3–107 as simply saying that once a petition is filed, it defines a proceeding. Further pleadings relating to the same subject matter, whether labelled motions or petitions, are part of the same proceeding. When the subject matter of two petitions overlap, it would generally be appropriate to consider both petitions as belonging to the same proceeding. *See In re Estate of Stuckle*, 427 N.W.2d 96, 97 (N.D.1988) (Meschke, J., concurring).

Although it may sometimes be difficult to determine the scope of a proceeding, we are not without guidance from the Probate Code in determining whether proceedings are independent. For example, Section 45–3–412(A), although focusing on the circumstances in which a formal testacy order can be reopened, states as the general rule that "a formal testacy order under Sections 3–409 through 3–411 [45–3–409 to 45–3–411 NMSA 1978], including an order that the decedent left no valid will and determining heirs, is final as to all persons with respect to all issues concerning the decedent's estate that the court considered or might have considered incident to its rendition relevant to the question of whether the decedent left a valid will, and to the determination of heirs." Also, under Section 45–3–107 itself, "A proceeding for appointment of a personal representative is concluded by an order making or declining the appointment," thereby implying that such an order is final and appealable. When a petition combines both a request for formal probate of a will and a request for an order for appointment of a personal representative, a combination which is explicitly permitted by Section 45–3–107, we assume that an order is ordinarily final and appeal-

able only when both matters have been decided, subject, of course, to SCRA 1986, 1–054(C)(1), the New Mexico Rule of Civil Procedure that permits a court to enter a final judgment as to fewer than all of the claims presented in an action if there is no just reason for delay.

■ Turning to this case, Vance's Motion to Enforce Settlement Agreement perhaps could properly be construed as initiating an independent proceeding. The issues raised in the motion, however, overlap those raised by Potter's petition, which sought formal probate of the Will, an order determining the heirs of the decedent, and Potter's formal appointment as personal representative of the estate. Under the purported settlement agreement, Potter would not be personal representative and would not inherit under the Will. Hence, Vance's motion can best be viewed as part of the proceeding initiated by Potter's petition. The district court apparently so viewed the motion. The district court's order of July 3, 1990—which ordered that the Will be formally probated, appointed Potter as personal representative, and determined that Potter was the sole heir—explicitly deferred ruling on the enforceability of the alleged settlement agreement.

Regardless of whether Vance's Motion for Enforcement of Settlement Agreement instituted an independent proceeding or was simply part of the proceeding initiated by Potter's petition, the district court's October 2, 1990, order denying the motion concluded the proceeding. No further action was needed to determine all of the issues raised in Potter's petition and Vance's motion. Those issues are essentially the issues that would ordinarily be determined by a formal testacy order under Sections 45–3–409 through 45–3–411 and a proceeding for appointment of a personal representative. As noted above, Sections 45–3–412(A) and 45–3–107 imply that if a petition joins those issues, then the order deciding them is a final order. Consequently, the order denying Vance's motion, in light of the earlier July 3, 1990, order, was a final, appealable order.

To be sure, after the court entered its order denying the Motion to Enforce Settlement Agreement, there were still matters remaining to be determined by the district court with respect to the estate. The district court still needed to consider Potter's petition for an order of complete settlement of the estate. That petition, however, initiated an independent proceeding. We recognize that an order of complete settlement is dependent on the validity of prior orders entered with respect to the estate—certainly the complete settlement here would be significantly different if the district court had refused to probate the Will. But if the fact that the order of final settlement depends on the validity of prior orders suffices to prevent the prior orders from being final, then there could be no final, appealable order with respect to an estate prior to entry of the order of final settlement. Not only is this result inconsistent with the statement in Section 45–3–107 that each proceeding before the district court is independent of any other proceeding; this result would also prevent an aggrieved party from knowing whether to appeal an order until that party knows whether the personal representative will close the estate by filing a verified statement (in which case there will be no further district court order) or by petitioning for an order of complete settlement of the estate. By the time the aggrieved party knows which path the personal representative will take, the time for appeal may have expired.

We also note that Vance's motion to set aside the July 3, 1990, order did not delay the finality of the district court's order denying Vance's Motion to Enforce Settlement. The motion to set aside sought reconsideration or reopening by the district court of its earlier decision admitting the Will to probate. At the time that Vance filed his notice of appeal, a motion to reconsider or set aside an order did not delay the finality of the order. *See* SCRA 1986, 1–060(B), 12–201(D) (Supp.1991 p. 2); *Archuleta v. New Mexico State Police,* 108 N.M. 543, 775 P.2d 745 (Ct.App.1989).

■ Having decided that the district court order denying Vance's Motion to En-

force Settlement Agreement was final and appealable, it follows that the notice of appeal filed 58 days later was untimely. *See* SCRA 1986, 12–201(A). That does not, however, end our inquiry into whether we may consider Vance's appeal of the order. Recently, in *Govich v. North American Systems*, 112 N.M. 226, 230, 814 P.2d 94, 98 (1991), our supreme court stated that the mandatory rules of appellate practice are "mandatory," not "jurisdictional." Although the time limits for filing appeals may still be rigidly enforceable, *see Lowe v. Bloom*, 110 N.M. 555, 556–57, 798 P.2d 156, 157–58 (1990) (Montgomery, J., dissenting), perhaps in exceptional circumstances an appellate court could consider an appeal that was not timely filed. One such exceptional circumstance might be reasonable reliance on a precedent indicating that the order not timely appealed was not a final, appealable order. That may be the case here. Although *In re Estate of Foster* might be distinguished from the present case, the language in that opinion could justify a reasonable belief that the order denying Vance's motion was not final and appealable. Therefore, we believe that it is appropriate to note that we have reviewed the record relating to Vance's motion and find no reversible error in the district court's denial of the motion.

### III. MOTION TO SET ASIDE ORDER OF JULY 3, 1990

■ Vance's second contention on appeal is that the district court committed reversible error in denying his motion to set aside the district court order of July 3, 1990, which admitted the Will to probate. He first relies on SCRA 1986, 1–060(B)(4), which permits the court to relieve a party of a final judgment, order or proceeding if "the judgment is void." He contends that the court lacked jurisdiction to admit the Will to probate because the Will was void as against public policy. According to Vance, by disinheriting him if he continued to be married to or live with Deborah Cornett at the time of Newalla's death, the

Will tended to induce or bring about a separation or divorce, contrary to public policy. Potter responds by stating that Vance testified at his deposition that he was wholly unaware of Newalla's plans for disposing of her estate and by citing authority in support of the proposition that "[b]equests which vest depending on the marital status of the recipient at the time of the testator's death are also generally upheld on the basis that no continuing inducement to divorce or separation is thereby offered." Annotation, Wills: *Validity of Condition of Gift Depending on Divorce or Separation*, 14 A.L.R.3d 1219, 1222 (1967).

Regardless of the merits of Vance's public policy argument, we hold that the district court did not commit reversible error in denying Vance's motion to set aside the July order. Even if the Will was void as against public policy, the district court had jurisdiction to enter its July order. Our supreme court has made clear that a district court has jurisdiction to consider a claim that has no merit. *See Sundance Mechanical & Util. Corp. v. Atlas*, 109 N.M. 683, 687–90, 789 P.2d 1254, 1254–57 (1990). The district court had jurisdiction under the Probate Code to decide whether to admit the Will to probate.

Vance also relies on Section 45–3–1001(D). That subsection states:

If one or more heirs or devisees were omitted as parties in, or were not given notice of, a previous formal testacy proceeding, the district court, on proper petition for an order of complete settlement of the estate under this section, and after notice to the omitted or unnotified persons and other interested persons determined to be interested on the assumption that the previous order concerning testacy is conclusive as to those given notice of the earlier proceeding, may determine testacy as it affects the omitted persons and confirm or alter the previous order of testacy as it affects all interested persons as appropriate in the light of the new proofs.

Vance argues that this statute required the district court to consider his motion to set aside the July order. We are not persuaded. Section 45–3–1001(D) applies only when an heir or devisee was omitted as a party or not given notice of the previous formal testacy proceeding. Vance fails to point to any such heir or devisee. Therefore, Section 45–3–1001(D) cannot help him.

Because on appeal Vance advances no other arguments for reversing the district court's denial of his motion to set aside the July order, we need not consider whether there are any other grounds that would have permitted or required the district court to grant the relief sought by Vance.

## IV. CONCLUSION

For the foregoing reasons, we affirm the orders of the district court.

IT IS SO ORDERED.

CHAVEZ and FLORES, JJ., concur.