**Certiorari Denied, January 9, 2013, No. 33,935**

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**Opinion Number: 2013-NMCA-024**

**Filing Date: November 2, 2012**

**Docket No.  31,230**

**IN THE MATTER OF BRUCE C. CLINESMITH,**
**an Adult Incapacitated Person (now deceased),**

**RUTH CLINESMITH,**

>        **Interested Party-Appellant,**

**v.**

**CATHE TEMMERMAN,**

>        **Petitioner-Appellee,**

**and**

**DECADES, LLC,**

>        **Conservator-Appellee Intervenor,**

**and**

**MOODY BIBLE INSTITUTE OF CHICAGO,**

>        **Intervenor-Appellee.**

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
**Linda M. Vanzi, District Judge**

Peter B. Shoenfeld, P.A.
Peter B. Shoenfeld
Santa Fe, NM

Sawtell, Wirth & Beidscheid, P.C.
Peter F. Wirth

1

Santa Fe, NM

for Appellant

Hurley, Toevs, Styles, Hamblin & Panter, P.A.
Gregory W. MacKenzie
Albuquerque, NM

for Appellee Cathe Temmerman

Pregenzer, Baysinger, Wideman & Sale, PC
Ruth O. Pregenzer
Albuquerque, NM

for Conservator-Appellee Decades, LLC

Keleher & McLeod, P.A.
W. Spencer Reid
Thomas C. Bird
Gary J. Van Luchene
Albuquerque, NM

for Intervenor-Appellee Moody Bible Institute of Chicago

## OPINION

**BUSTAMANTE, Judge.**

**{1}**     In early 2005, Bruce Clinesmith was suffering from Alzheimer's disease. The district court appointed a guardian and conservator to protect his person and assets. After the conservator was appointed, Ruth Clinesmith (Wife) and her attorney met with Mr. Clinesmith at the locked assisted care facility where he had been admitted. The conservator unsuccessfully tried to stop the meeting. During the meeting, Mr. Clinesmith executed a new estate plan giving Wife control of his estate. In response to a motion by the conservator to prevent interference with its duties, the district court voided the estate plan. This case presents two issues. Did the district court have jurisdiction over the new estate plan? This appeal was filed over five years after the district court voided the estate plan. Is the appeal timely? Answering the former question in the affirmative and the latter in the negative, we dismiss.

## I.     Background

**{2}**     In March 2005, Mr. Clinesmith's daughter, Cathe Temmerman, filed a verified petition for the appointment of a guardian and conservator, asserting that Mr. Clinesmith

2

suffered from dementia such that he was incapable of managing both his declining health and his estate of over $11 million. At the time the petition was filed, Mr. Clinesmith was eighty-seven years old and living with his Wife in a private residence, but after a hospital stay he was moved into the dementia/Alzheimer's unit at an elder care facility in late May 2005. Mr. Clinesmith and Wife, initially both represented by attorney Stuart Stein, opposed the petition.

**{3}** Starting in 1992, Mr. Clinesmith had arranged for the bulk of his estate to go to Moody Bible Institute of Chicago (Moody). The estate was spread among three revocable trusts; two administered by Moody and the third by a commercial trust—Salomon Smith Barney. The trust provisions allowed Mr. Clinesmith to draw on the trust assets for his expenses. In separate but parallel proceedings commenced in federal court while this guardianship/conservatorship action in state court was pending, Wife attempted to gain control of the trust assets. In addition, Wife sought to have the monies held in trust for Moody transferred to her pursuant to a power of attorney signed by Mr. Clinesmith in early 2004.

**{4}** In compliance with NMSA 1978, Section 45-5-407 (1998) of the Uniform Probate Code (UPC), the district court appointed a guardian ad litem on March 4, 2005, to represent Mr. Clinesmith. *See* NMSA 1978, §§ 45-1-101 to -7-612 (1975, as amended through 2012). On August 5, 2005, the district court appointed Decades, LLC, an elder care management organization, as a temporary guardian and conservator with "full" powers to manage Mr. Clinesmith's assets. The same order disqualified Mr. Stein from representing Mr. Clinesmith on the ground that his interests and Wife's interests were adverse and, therefore, Mr. Stein could not represent both. The order also revoked the 2004 power of attorney granted to Wife by Mr. Clinesmith.

**{5}** Disregarding the order and its effects, Mr. Stein and Wife met with Mr. Clinesmith at the elder care facility on August 18, 2005, without notifying the district court, Decades, or the guardian ad litem of the meeting. Staff at the elder care facility notified Decades that Mr. Stein and Wife, along with several of Mr. Stein's staff, were meeting with Mr. Clinesmith in a private room. A social worker and an attorney representing Decades arrived at the facility shortly thereafter. The Decades staff attempted unsuccessfully to stop the meeting altogether and were unable to discuss the documents with Mr. Clinesmith.

**{6}** At the meeting, Mr. Clinesmith signed a new will naming Wife as personal representative and a new trust document naming Wife as trustee. We refer to these documents as the "new estate plan." The effect of these modifications was to revoke the previous trusts and "create a new trust with [Wife] as trustee with all the power 'that an absolute owner of such property would have.' " *In re Stein*, 2008-NMSC-013, ¶ 12, 143 N.M. 462, 177 P.3d 513 (per curiam). "These documents had the additional effect of removing all of the assets belonging to [Mr. Clinesmith] from the jurisdiction of the court in the guardianship and conservatorship proceeding." *Id.*

3

**{7}** Decades and Ms. Temmerman (Appellees) filed a motion and sought an emergency hearing to prevent Mr. Stein from "interfer[ing] . . . with Decades' performance of its duties and the exercise of its powers as temporary guardian and conservator of [Mr.] Clinesmith." The specific relief requested was an order

> preventing [Mr.] Stein from having any contact with Mr. Clinesmith, ordering [Mr.] Stein to produce all documents that were presented or involved in the meeting at [Mr. Clinesmith's residence in the Alzheimer's ward at an elder care facility] on August 18, 2005, ordering [Mr.] Stein to produce all documents or records pertaining to his representation of Mr. Clinesmith, and for all such other and further relief as the Court deems just and proper.

At the emergency hearing on the motion, Decades requested orally that the new estate plan be voided. Mr. Stein objected that this request was not made in writing in the motion and, therefore, he did not have notice of such request. The district court orally granted the motion and Decades' request to void or hold "frozen" the new estate plan. The district court voided the new estate plan "for a variety of reasons, not the least of which is that [the court thought] that they were improperly—the signatures were improperly gained." The district court denied Mr. Stein's oral request for an interlocutory appeal of this order. The district court's order was filed on August 29, 2005. Wife did not file a motion for rehearing or reconsideration of this order. After another hearing, the district court disqualified Mr. Stein from representing Wife "and [a]ll [o]ther [p]ersons with [i]nterests [a]dverse to [Mr.] Clinesmith." Finally, on October 7, 2005, the district court appointed Decades as permanent guardian and conservator for Mr. Clinesmith.

**{8}** Wife timely filed a notice of appeal from this order on November 4, 2005. The notice stated that she appealed "from the final [o]rder entered . . . on October 7, 2005, . . . and from all orders and rulings that preceded, led to, and produced said [o]rder." Wife then voluntarily dismissed the appeal in February 2006. Mr. Clinesmith died on May 9, 2010, and the district court accepted the recommendations of a special master and approved Decades' final report on March 4, 2011. The present appeal was timely filed on April 4, 2011, over five years after entry of the October 7, 2005, order.

**{9}** As a result of his conduct in this matter, Mr. Stein was disbarred for five years. *Id.* ¶¶ 19, 73. The Supreme Court held that Mr. Stein's conduct violated the New Mexico Rules of Professional Conduct, including, inter alia, Rule 16-402 NMRA (communication with persons represented by counsel); Rule 16-804(C) NMRA (misconduct); Rule 16-109(A) NMRA (representing a person in the same or substantially related matter in which that person's interests were materially adverse to those of a former client). *In re Stein*, 2008-NMSC-013, ¶¶ 27, 32, 39. Recognizing that Mr. Stein had described Mr. Clinesmith in pleadings as suffering from early stages of dementia and otherwise expressed doubt as to Mr. Clinesmith's competency, the Court wrote, "[w]hat is so reprehensible to this Court is that [Mr. Stein], acknowledging that [Mr. Clinesmith's] mental capacity was in question,

4

attempted to take money from him and transfer it to [Wife,] while purporting to represent both of them." *Id.* ¶ 25.

## II.     Discussion

**{10}**     Appellees argue that Wife failed to timely appeal and, therefore, the appeal should be dismissed.  The parties appear to agree that the August 29, 2005, order invalidating the new estate plan was not a final order.  While we are not convinced that this is the case, we accept this premise consistent with our interest in facilitating the right to appeal and because we do not pursue arguments the parties do not make.  *See Govich v. N. Am. Sys., Inc.*, 112 N.M. 226, 230, 814 P.2d 94, 98 (1991); *Headley v. Morgan Mgmt. Corp.*, 2005-NMCA-045, ¶ 15, 137 N.M. 339, 110 P.3d 1076 ("We will not review unclear arguments, or guess at what [a party's] arguments might be.").  Appellees argue that the October 7 order was final because it resolved all of the issues in Ms. Temmerman's initial petition and incorporated all previous orders such that appeal of the August 29 order should have been filed within thirty days of the October 7 order.

**{11}**     Wife maintains that the October 7 order did not make the order voiding the new estate plan final and appealable.  As we understand her argument, Wife argues that (1) the district court did not have jurisdiction to void the new estate plan because such relief was not requested in Decades' motion, or the issue could not be considered until after Mr. Clinesmith's death; and (2) because the court had no jurisdiction over the matter, any order on the new estate plan was not final and appealable.  Wife argues that the August 29 order became final only after Mr. Clinesmith died and the district court adopted the special master's recommendations as to his estate on March 4, 2011.  Thus, Wife argues, the appeal filed on April 4, 2011, was timely under Rule 12-201 NMRA.

**{12}**     We hold that the district court had the power to address the new estate plan because the district court was exercising its general civil jurisdiction and its order was within the scope of the motion.  We also hold that the district court was not precluded from addressing the signing of the new estate plan prior to Mr. Clinesmith's death.  We conclude further that the October 7 order incorporated the August 29 order and that both orders became final and appealable on October 7, 2005.  As a result, this appeal—filed over five years later—is untimely.

### A.     Standard of Review

**{13}**     The questions before us require that we construe the UPC and the appellate rules.  Statutory interpretation is a question of law which an appellate court undertakes de novo.  *Grygorwicz v. Trujillo*, 2009-NMSC-009, ¶ 7, 145 N.M. 650, 203 P.3d 865 ("Determining whether [an] appeal was timely involves the interpretation of court rules, which we review de novo."); *Ottino v. Ottino*, 2001-NMCA-012, ¶ 6, 130 N.M. 168, 21 P.3d 37 ("Whether the district court is possessed of jurisdiction over the subject matter of a case is a question of law that we review de novo.").

**B.      The District Court Had Jurisdiction Over The New Estate Plan**

**{14}**    Wife maintains that the new estate plan did not fall within the scope of the petition that prompted the August 29 or October 7 orders and, therefore, the district court could not rule on that issue.  She argues additionally that, even if the new estate plan fell within the scope of the petition, the new estate plan could not be considered until after Mr. Clinesmith's death.  We are not persuaded.

**1.      The New Estate Plan Was Raised in the Motion**

**{15}**    The August 29 order voided the new estate plan in response to Decades' motion to prevent interference with its duties as temporary guardian and conservator of Mr. Clinesmith's estate.  That motion described Mr. Stein's meeting with Mr. Clinesmith to sign the new estate plan as "interfer[ing] with Decades' performance of its duties and exercise of its powers as Mr. Clinesmith's guardian and conservator  . . . over Decades' clear and unequivocal objection."   Decades' duties are related to the overall purpose of a conservatorship:  "[T]o protect the person and property of persons whose functional and decision-making capacity has become impaired."  57 C.J.S. *Mental Health* § 151 (2007).  A conservator is "a person who is appointed by a court to manage the property or financial affairs or both of a protected person[.]"   Section 45-5-101(A).  "In the exercise of a conservator's powers, a conservator shall act as a fiduciary . . . ."  Section 45-5-417.  Thus, a conservator has the authority and obligation to manage the financial affairs of the protected person in that person's stead.

**{16}**    The facts admitted by Mr. Stein at the hearing are sufficient to show that Mr. Stein (1) arranged to meet with Mr. Clinesmith about the new estate plan without notifying Decades, the district court, or the guardian ad litem of the meeting; (2) met with Mr. Clinesmith over the objections of Decades' staff who arrived after the meeting had begun; and (3) refused to discontinue the meeting or allow Decades' staff to read the documents or take over the meeting.  Since Decades was appointed by the court to "manage the property or financial affairs" of Mr. Clinesmith, any action by Mr. Stein to alter the disposition of Mr. Clinesmith's estate without Decades' knowledge and approval, even if it were at the request of Mr. Clinesmith himself, was an interference with Decades' duties.

**{17}**    To the extent Wife argues that she was denied due process of law because she had no notice of Appellees' intent to request that the new estate plan be voided and no opportunity to present evidence, we disagree.  Decades' motion requested relief from Mr. Stein's interference with its duties, and Wife acknowledged Decades' motion in her response.  In that response, Wife averred that "[t]he meeting with the Clinesmiths, the witnesses and the two doctors [who accompanied Mr. Stein] was going fine and without incident until [a Decades staff member] came in the room."   Wife acknowledged that Decades' staff tried to end the meeting and prevent Mr. Clinesmith from signing the new documents.  Although Wife claimed that "[t]he [m]otion is . . . silent as to what was the interference with the exercise of the powers of the [t]emporary [g]uardian and [t]emporary

6

[c]onservator[,]" the facts, recited by Wife in her response, reflect that Decades sought to prevent the meeting and the signing of documents, and that this objective was thwarted by Wife and Mr. Stein. Wife's response itself is evidence that the motion was sufficient to provide notice of Decades' intent.

{18}    Wife's argument that she was denied the opportunity to present evidence on this issue also misses the mark. Wife does not direct this Court to the evidence she would have presented in the district court. Nevertheless, the parties appear to agree on the essential facts: that Mr. Stein arranged a meeting with Mr. Clinesmith without notifying Decades, the district court, or the guardian ad litem and that Decades staff attempted unsuccessfully to prevent the meeting and the signing of a new estate plan. These facts alone establish Mr. Stein's interference with Decades' duties as guardian and conservator, which was the basis of the August 29 order. As the district court explained:

> Mr. Stein, my ruling is based on the fact that I issued an order in this case, and that you, with full knowledge of Mr. Clinesmith's incapacity, nevertheless, went and saw him on two occasions and secured a signature from him. The trust is a very big issue because that is the basis of the [f]ederal [c]ourt lawsuit and that is the very thing that is being changed, and so on that basis, I don't really need to hear testimony from other people. You've admitted the things that I needed to hear today from you.

Additional evidence as to Mr. Clinesmith's testamentary capacity, the specifics of who said what in the meeting, or Mr. Clinesmith's intent would not alter these undisputed facts.

## 2.    The District Court Had General Civil Jurisdiction

{19}    The district court had general civil jurisdiction over the conservatorship proceedings and the August 29 order was entered pursuant to that authority. The New Mexico Constitution limits jurisdiction over "special cases and proceedings" to that "conferred by law." N.M. Const. art. VI, § 13. Probate proceedings are special proceedings. *In re Estate of Harrington*, 2000-NMCA-058, ¶ 14, 129 N.M. 266, 5 P.3d 1070. In *In re Estate of Harrington*, however, this Court held that the UPC gives "district courts general civil jurisdiction in formal probate proceedings." *Id.* ¶¶ 17, 22; *see* §§ 45-1-302, -302.1. In that case, the question was whether the district court sitting in probate had the authority to liquidate a business that was the subject of a will contest. *In re Estate of Harrington*, 2000-NMCA-058, ¶ 1. This Court concluded that it did based on construction of the language of Section 45-1-302(B), which gives the district court power to, among other things, "make orders, judgments and decrees and to take all other action necessary and proper to administer justice in matters that come before it." *Id.*; *In re Estate of Harrington*, 2000-NMCA-058, ¶ 16. This Court also found that the UPC's intent to "promote a speedy and efficient system for the settlement of the estate of the decedent" is facilitated by vesting general civil jurisdiction in the district court in formal probate proceedings. *Id.* ¶ 19 (internal quotation marks and citation omitted); *cf. Ottino*, 2001-NMCA-012, ¶ 14 (stating that "the district

court's original jurisdiction arises from our state's constitution" and explaining that "[i]n this light, the statutory jurisdiction vested in our district courts for the purposes of . . . entering orders . . . upon divorce ought not to be viewed as a *limitation* upon the courts' original jurisdiction, but as an augment to it").

**{20}** *In re Estate of Harrington* applies to formal probate proceedings, which are different from conservatorship proceedings. *See* § 45-3-401(A) ("A formal testacy proceeding is litigation to determine whether a decedent left a valid will."). Nevertheless, the factors that led the *In re Estate of Harrington* Court to its conclusion are also present in conservatorship proceedings and, therefore, we determine that district courts have general civil jurisdiction over them. We note first that "[t]he [UPC] governs conservatorship proceedings." *In re Conservatorship of Chisholm*, 1999-NMCA-025, ¶ 8, 126 N.M. 584, 973 P.2d 261. Thus, the general definitions and requirements of the UPC apply to conservatorship proceedings to the extent they do not conflict with specific provisions within Article 5 of the UPC, which governs protection of minors and incapacitated persons. *See, e.g.*, §§ 45-1-102, -201, -5-101. Secondly, the issues to be resolved in formal probate proceedings are similar in gravity to those addressed by conservatorship proceedings. The New Mexico Constitution reserves to district courts sitting in probate, rather than probate courts, those issues related to title or possession of real property, which are often the most significant, contested, and complex aspects of the decedent's estate. N.M. Const. art. VI, § 23; *see In re Estate of Duncan*, 2002-NMCA-069, ¶ 15, 132 N.M. 426, 50 P.3d 175, *rev'd on other grounds by In re Estate of Duncan v. Kinsolving*, 2003-NMSC-013, ¶ 8, 133 N.M. 821, 70 P.3d 1260. This division of labor indicates the desire to give these issues the greater protections of a district court.

**{21}** In many ways, the appointment of a conservator is more significant than a formal probate because the appointment deprives the protected person of the autonomy to manage his or her own estate and financial affairs. The importance of this determination is reflected in the statutory conditions for conservatorships, which require, inter alia, (1) notice to those who may have an interest in the protected person or the estate, Section 45-5-405; (2) careful consideration of the least restrictive means of managing the affairs of the protected person, Section 45-5-402.1(A); (3) appointment of a guardian ad litem, visitor, and health care professional to advise the court on the capacity of the person to be protected, Section 45-5-407(B), (C), (D); a jury trial, if requested, Section 45-5-407(P); and (4) processes for the protected person to terminate the conservatorship, Section 45-5-430.

**{22}** In addition, like district courts sitting in formal probate proceedings, district courts in conservatorship proceedings exercise broad powers. Section 45-1-302, a general provision applicable to conservatorship proceedings, provides that:

> A. The district court has exclusive original jurisdiction over all subject matter relating to:
>
> . . . .

8

(2)     estates of missing and protected persons;

(3)     protection of incapacitated persons and minors;

. . . .

(7)     governing instruments except wills.

B.     . . . The district court has full power to make orders, judgments and decrees and *to take all other action necessary and proper to administer justice* in matters that come before it.

(Emphasis added.) In addition, Section 45-5-405.1 states that once a basis for appointment of a conservator has been established,

A.     . . . the court, without appointing a conservator, may authorize, direct or ratify any transaction necessary or desirable to achieve any security, service or care arrangement meeting the foreseeable needs of the person.

. . . .

B.     . . . the court, without appointing a conservator, may authorize, direct or ratify any contract, trust or other single transaction relating to the protected person's estate and financial affairs if the court finds that the transaction is in the best interests of the protected person.

Furthermore, Section 45-5-402 provides that

After the service of notice in a proceeding seeking the appointment of a conservator or other protective order and until termination of the proceeding, the court in which the petition is filed has:

A.     exclusive jurisdiction to determine the need for a conservator or other protective order;

B.     exclusive jurisdiction to determine how the estate of the protected person which is subject to the laws of New Mexico shall be managed, expended or distributed to or for the use of the protected person or any of his dependents[.]

**{23}**     As in *In re Estate of Harrington*, we look also to whether the purposes of Article 5 of the UPC "would be frustrated if we gave [it] a narrower interpretation." *In re Estate of Harrington*, 2000-NMCA-058, ¶ 20. As discussed above, the goal of a conservatorship "is

to protect the person and property of persons whose functional and decision-making capacity has become impaired." 57 C.J.S. *Mental Health* § 151. The facts before us here provide a prime example of why limiting the district court's authority would frustrate that purpose. A temporary conservator was appointed to manage Mr. Clinesmith's estate and financial affairs. Obviously, conduct interfering with those duties is contrary to the goal of the appointment. To hold that the district court was powerless to rectify the interference would frustrate the overarching purpose of the proceedings: the protection of Mr. Clinesmith and his financial affairs.

**{24}** Finally, conservatorship proceedings require a level of judicial oversight and notice that is similar to or more stringent than that in formal probate proceedings. "The distinctions between informal and formal proceedings include the degree of notice and judicial oversight required." *In re Estate of Duncan*, 2002-NMCA-069, ¶ 15. Formal proceedings are those "conducted before a district judge with notice to interested persons[,]" Section 45-1-201(A)(19), whereas informal proceedings are "conducted without notice to interested persons." Section 45-1-201(A)(25). The UPC includes extensive notice requirements for conservatorship proceedings, not only for the initial petition for conservator, but also for other motions and petitions in the course of the proceedings. *See, e.g.*, §§ 45-5-402.1(B)(3), (C), -405, -406(A) (requiring notice to "[a]ny interested person who desires to be notified before any order is made in a . . . protective proceeding" who requests notice); §§45-5-416(C), -430.

**{25}** The UPC requires substantial judicial oversight throughout the conservatorship proceedings and continuing until the protected person's death and termination of the conservatorship. *See, e.g.*, §§ 45-5-402, -402.1(B)(3) (giving the court "all the powers over the estate and financial affairs which the [protected] person could exercise if present and not under disability, except the power to make a will"); §§ 45-5-405.1, -407, -416(C) (stating that "[u]pon notice and hearing, the court may give appropriate instructions or make any appropriate order" on motions subsequent to appointment of a conservator). Thus, the UPC sets out specific procedures for appointment of a conservator for the protection of the rights of the incapacitated person. *See* § 45-5-402.1(A) (stating that the court's authority must be exercised to promote the "maximum self-reliance and independence of a protected person and [the court may] make protective orders only to the extent necessitated by the protected person's mental and adaptive limitations"). Failure to follow these rules renders the proceedings invalid. *See Bonds v. Joplin's Heirs*, 64 N.M. 342, 345, 328 P.2d 597, 599 (1958). In fact, under these rules, conservatorship proceedings are formal by default: unlike the proceedings available for probate of a will, there is no procedure whereby a conservator may be appointed *without* judicial oversight.

**{26}** In sum, the new estate plan was properly before the district court because it was addressed by Decades' motion and because the district court had and was exercising its general civil jurisdiction when it dealt with the motion. The finality of the August 29 and October 7 orders is not affected by any lack of jurisdiction.

### 3. The District Court Had The Power to Void The New Estate Plan Prior to Mr. Clinesmith's Death

**{27}** Wife argues that, notwithstanding the appointment of Decades as temporary conservator and temporary guardian, Mr. Clinesmith was entitled to make changes to his estate plan without the district court's prior approval, provided that he did so during a period of lucidity, and that, absent a probate action, the district court could not void the new estate plan. Wife further argues that the district court's reliance on the documents filed by Mr. Stein which set forth Mr. Stein's understanding that Mr. Clinesmith was suffering from "some sort of memory loss or dementia" did not provide a basis for the district court's order voiding the new estate plan because issues related to Mr. Clinesmith's testamentary capacity "should only be evaluated in the pending probate case." This argument is unavailing for two reasons.

**{28}** First, this argument about the status of the will does not address the alteration of the trust documents, the effect of which was to give Wife power over Mr. Clinesmith's property and remove his assets from the jurisdiction of the district court in the conservatorship proceedings. *In re Stein*, 2008-NMSC-013, ¶ 12. This act was in violation of the district court's authority over the property as well as the conservator's duties. *See* § 45-5-402(B) ("After the service of notice in a proceeding seeking the appointment of a conservator . . . until termination of the proceeding, the court . . . has . . . exclusive jurisdiction to determine how the estate of the protected person . . . shall be managed[.]" The order voiding the new estate plan was an exercise of the district court's general civil jurisdiction over conduct that contravened that authority.

**{29}** Second, this argument presumes that the district court's order voiding the new estate plan was based on an assessment of Mr. Clinesmith's testamentary capacity. Wife relies on *Lucero v. Lucero* in support of her argument. 118 N.M. 636, 884 P.2d 527 (Ct. App. 1994), *superseded on other grounds by statute as stated in Chapman v. Varela*, 2009-NMSC-041, 146 N.M. 680, 213 P.3d 1109. She argues that the new estate plan could not even be considered until after Mr. Clinesmith's death because "nothing in the UPC prohibit[s] [the protected person] from executing [a] will merely because [another] was appointed to be the conservator of her property." *Id.* at 639, 884 P.2d at 530.

**{30}** *Lucero* is inapposite because it pertained to probate of a will and Mrs. Lucero's testamentary capacity whereas here the proceedings were to appoint a conservator and guardian. *Id.* at 638, 884 P.2d at 529. The district court voided the new estate plan not because Mr. Clinesmith lacked capacity, but because "the signatures were improperly gained." The order did not prohibit Mr. Clinesmith from amending his estate plan under properly protective arrangements. Indeed, the UPC explicitly permits a conservator to "faciliat[e] execution of a new will or estate plan where the protected person has sufficient mental capacity[.]" *Id.* at 640, 884 P.2d at 531. Had he wished to, Mr. Clinesmith could have requested Decades' assistance with hiring an attorney to prepare a new will and trust documents just as Mrs. Lucero did. Thus, unlike in *Lucero*, neither the hearing nor the order

were directed at Mr. Clinesmith's testamentary capacity. Rather, the focus of the hearing was on Mr. Stein's behavior in light of the district court's order prohibiting him from representing Mr. Clinesmith and the appointment of a guardian ad litem and conservator for Mr. Clinesmith. Although the district court questioned Mr. Stein about his understanding of Mr. Clinesemith's capacity and referred to Mr. Clinesmith's capacity in the hearing, the order voiding the new estate plan was not directed at whether Mr. Clinesmith intended to amend his estate plan; rather its effect was to return Mr. Clinesmith to the status quo ante the interference. As discussed, the district court had general civil jurisdiction over these proceedings. Nothing in *Lucero* limits that authority in this case.

**{31}** Wife contends that *Lucero* stands for the proposition that "[t]he testamentary capacity of Bruce Clinesmith on August 18, 2005 . . . should only be evaluated in the pending probate case." *Lucero* does not so hold. Although the *Lucero* court determined that "[t]he mental capacity of the disabled person was thus intentionally left open [by the UPC] for future litigation, often postmortem[,]" 118 N.M. at 638, 884 P.2d at 529, it does not follow that the UPC *requires* that litigation of the testamentary capacity of the protected person take place only after death. Wife finds a prohibition where there is only an observation—that such analysis *often* takes place after death. That the UPC does not foreclose creation of a new will while under conservatorship does not have any impact on whether or when litigation over that instrument will take place.

**{32}** Though Wife maintains that *Lucero* is "on all fours" with the present case, it is distinguishable. In *Lucero*, one of the testator's sons had been appointed conservator and, at her request, he arranged for an attorney to meet with her to make a new will. The testator then died. *Id.* In a formal probate proceeding at which another son sought to introduce the first will, the district court ruled that appointment of a conservator created "a rebuttable presumption that Mrs. Lucero lacked testamentary capacity[,]" but found that "at the time of execution of the [later] will, Mrs. Lucero . . . was capable of understanding, in a reasonable manner, the nature and effect of the act of executing her Last Will and Testament." *Id.* (internal quotation marks omitted). The later will was admitted to probate. *Id.* This Court affirmed. *Id.*

**{33}** The procedures employed by the conservator in *Lucero* and the process by which the new will was made distinguish *Lucero* from this case. There, the *conservator* arranged for an attorney to meet privately (except for the witness) with Mrs. Lucero at her home. *Id.* at 639, 884 P.2d at 530. No one with an interest in Mrs. Lucero's estate was present, including the conservator, to whom she left a greater portion of her estate than to her other devisees. *Id.* at 639-40, 884 P.2d at 530-31. Here, the conservator was unaware of the meeting regarding the new estate plan until it was underway and was prevented from reviewing the documents or discussing them with Mr. Clinesmith. The meeting was attended by (1) Wife, who had a substantial interest in the new estate plan and whose interests had been declared adverse to Mr. Clinesmith's; and (2) Mr. Stein, who represented Wife and was prohibited from representing Mr. Clinesmith in any way. Because Mr. Stein was prohibited from representing Mr. Clinesmith due to the conflict of interest with Wife, no one in the meeting

12

was representing Mr. Clinesmith's interests until the staff from Decades arrived, and they were unsuccessful in stopping the meeting or the signing of documents.

**{34}** At the hearing, Mr. Stein argued that Decades' motion pertained only to future conduct and, therefore, did not address his conduct on August 18. Although Wife does not make this argument explicitly on appeal, she makes a similar one: that Decades did not ask specifically for the new estate plan to be voided and, therefore, the court was without power to do so. This argument is without merit not only because, as discussed above, the new estate plan was incorporated into the motion, but also because it assumes the district court is powerless to rectify the instances of interference that prompted the motion in the first place. The motion included a description of the conduct complained of and stated that the meeting resulted in "an [a]mended and [r]estated [t]rust and a new [w]ill." Thus, it obviously encompassed Mr. Stein's past interference with Decades' ability to manage Mr. Clinesmith's estate. To hold that only future interference was addressed by the motion would be absurd because such an interpretation would permit the results of the interference to stand uncorrected even after they were brought to the attention of the district court. This interpretation is counter to the fundamental goals of the UPC and conservatorships.

## C. The October 7 Order Was a Final Order

**{35}** Having determined that the district court had subject matter jurisdiction over the new estate plan and, therefore, there was no jurisdictional bar to the district court's ruling on the new estate plan, we turn to whether the October 7 order was final and appealable. Only final orders are appealable. NMSA 1978, § 39-3-2 (1966); *Kelly Inn No. 102, Inc. v. Kapnison*, 113 N.M. 231, 234 n.7, 824 P.2d 1033, 1036 n.7 (1992). "The general rule in New Mexico for determining the finality of a judgment is that an order or judgment is not considered final unless all issues of law and fact have been determined and the case disposed of by the trial court to the fullest extent possible." *Kelly Inn*, 113 N.M. at 236, 824 P.2d at 1038 (internal quotation marks and citation omitted). This general rule is not inflexible. *Id.* It "is to be given a practical, rather than a technical, construction." *Id.*

**{36}** In this case, a detailed analysis of the practical effect of court orders is unnecessary because Section 45-3-107 of the UPC addresses this question. In the context of probate proceedings, "each proceeding before the district court or probate court is independent of any other proceeding involving the same estate." *Id.*; *see In re Estate of Newalla*, 114 N.M. 290, 294, 837 P.2d 1373, 1377 (Ct. App. 1992) ("To hold that orders terminating separate proceedings are final orders is to give finality a practical, rather than a technical, construction." (internal quotation marks and citation omitted)). An order is final if it is dispositive as to the issues raised in the petition prompting the order. *In re Estate of Newalla*, at 294, 837 P.2d at 1377; *see* § 45-1-201(A)(38) (defining "petition" as "a written motion or other request to the district court for an order after notice"). Multiple petitions may be addressed in a single proceeding and order, and "no petition is defective because it fails to embrace all matters which might then be the subject of a final order." Section 45-3-107. This rule of the UPC works in conjunction with Rule 1-054 NMRA. *See* § 45-1-308

13

("Appellate review, including the right to appellate review [and] interlocutory appeal, . . . is governed by the rules applicable to civil appeals to the [C]ourt of [A]ppeals from the district court."); Rule 1-054; *In re Estate of Newalla*, 114 N.M. at 294-95, 837 P.2d at 1377-78 (stating that when there is more than one claim in a petition, "an order is ordinarily final and appealable only when both matters have been decided, subject, of course, to [Rule 1-054(B)(1)], [which] permits a court to enter a final judgment as to fewer than all of the claims presented in an action if there is no just reason for delay"). Under this rubric, the question of whether an order is final is a factual inquiry into whether the district court has fully decided the issues in the petition that prompted it.

**{37}**    A final order may be appealed pursuant to the Rules of Appellate Procedure. *See* § 45-1-308 (stating that appeals from proceedings conducted under the UPC are "governed by the rules applicable to civil appeals to the [C]ourt of [A]ppeals from the district court"). The Rules of Appellate Procedure provide that an appeal of right from the district court "shall be filed . . . within thirty (30) days after the judgment or order appealed from is filed in the district court clerk's office." Rule 12-201(A)(2). This rule states a "mandatory precondition[ ] to the exercise of jurisdiction," not an "absolute jurisdictional requirement." *Trujillo v. Serrano*, 117 N.M. 273, 277-78, 871 P.2d 369, 373-74 (1994) (emphasis omitted). Under *Trujillo*, this Court may review an appeal even when not timely filed, but "[o]nly [in] the most unusual circumstances beyond the control of the parties." *Id.* at 278, 871 P.2d at 374. "Procedural formalities should not outweigh basic rights where the facts present a marginal case which does not lend itself to a bright-line interpretation." *Id.* at 276, 871 P.2d at 372. The flexibility of this rule notwithstanding, "[c]ounsel should not rely on the court's munificence when filing notices of appeal. It is incumbent upon the parties to strictly adhere to our clearly articulated rules of procedure." *Id.* at 278, 871 P.2d at 374.

**{38}**    Ms. Temmerman's petition was for the appointment of a guardian and conservator. After appointment as temporary conservator and guardian on August 5, 2005, Decades sought an order to prevent Mr. Stein from interfering with its duties in that role. That motion was granted. On September 28, 2005, the district court heard argument on the petition and reviewed reports submitted by the guardian ad litem and court visitor. The court also heard argument on other pending motions. Wife withdrew several of her motions in opposition to the petition and other motions were rendered moot as a result. Thus, all pending matters related to the petition were resolved at that hearing and memorialized in the October 7, 2005, order that appointed Decades the permanent guardian and conservator. In the context of the UPC, the October 7 order was a final order.

**{39}**    Wife filed a notice of appeal of the October 7 final order within the thirty-day period required by Rule 12-201. Wife filed a "notice of voluntary abandonment of appeal" three months later on February 2, 2006, pursuant to NMSA 1978, § 39-3-14 (1851-1852), which provides that:

> In all causes appealed, or in any other manner brought from any inferior
> court to any superior court, the party appealing, . . . may, in like manner,

dismiss his appeal in the same manner as in the preceding section provided; and when said cause is dismissed, as aforesaid, the judgment in the inferior court shall remain and be in all things as valid, as if said cause had never been removed from said inferior court.

Based on that notice, the appeal was dismissed. No other appeal was initiated until the present appeal was filed on April 4, 2011.

**{40}** Wife argues that the first "appeal is not preclusive of the present appeal." We agree that the mere fact of a voluntarily dismissed appeal is not by itself preclusive of a second appeal. But neither does the voluntary abandonment of an appeal confer on an appellant dispensation to avoid the deadline for filing a second appeal. Section 39-3-14 states that, upon voluntary dismissal of an appeal, it is "as if said cause had never been removed from [the] inferior court." As Wife acknowledges, upon dismissal of an appeal, the parties are returned to their positions as of the entry of judgment in the lower court and retain their right to appeal the judgment subject to the statutes and rules governing appeals. *See id.*; Rule 12-401(B) NMRA; Rule 12-201. These rules require that an appeal be filed within thirty days. *See* Rule 12-201(A)(2). Wife was, therefore, obliged to file her appeal to the October 7 order within thirty days, regardless of whether the first appeal was voluntarily dismissed.

**{41}** There is a dearth of New Mexico cases addressing the effect of voluntary dismissal of an appeal directly. Authority from other jurisdictions persuades us that our construction of Section 39-3-14 is correct. In *United States v. Arevalo*, 408 F.3d 1233, 1237 (9th Cir. 2005), the Ninth Circuit Court of Appeals held that "an appellant who has voluntarily dismissed his appeal must move to reinstate within the time limits for filing a notice of appeal, or seek an extension of time from the district court to re-file the notice of appeal." (citation omitted). *Accord Williams v. United States*, 553 F.2d 420 (5th Cir. 1977) (stating that dismissal of an appeal "placed [appellant] in the same position as if they had never filed a notice of appeal in the first place" and stating that "[t]heir next notice of appeal was not filed until over a year after the judgment complained of was handed down [which was] obviously well outside the sixty-day limit").

**{42}** The appellate courts' ability under *Trujillo* to review untimely appeals does not save this appeal. *See Trujillo*, 117 N.M. at 278, 871 P.2d at 374. Here, Wife does not point to any unusual circumstances that would require extension of the filing deadline, nor did she request an extension of time to file an appeal. *See id.*; Rule 12-201(E)(1), (2). Furthermore, the extended period between the October 7 order and the date the appeal was filed—over five years—would stretch the flexibility permitted by *Trujillo* well beyond its breaking point. *See Trujillo*, 117 N.M. at 278, 871 P.2d at 374; *Chavez v. U-Haul Co. of N.M.*, 1997-NMSC-051, ¶¶ 19-22, 124 N.M. 165, 947 P.2d 122 (hearing an appeal where notice was filed fifty-eight minutes late, but declining to hear an appeal filed thirty days late).

**CONCLUSION**

15

**{43}** In conclusion, there was no jurisdictional bar to the district court's order voiding the plan. Since the court had jurisdiction and the October 7 order resolved all of the issues pertaining to the petition that prompted it, the order was final and appealable. Wife filed this appeal over five years after that order was filed, well beyond the thirty-day deadline, and has provided no extraordinary reason for this Court to consider the untimely appeal. We decline to do so and dismiss the appeal.

**{44}   IT IS SO ORDERED.**

_____
**MICHAEL D. BUSTAMANTE, Judge**

**WE CONCUR:**

_____
**JONATHAN B. SUTIN, Judge**

_____
**TIMOTHY L. GARCIA, Judge**

**Topic Index for *Clinesmith v. Temmerman*, No. 31,230**

**APPEAL AND ERROR**
Standard of Review

**CIVIL PROCEDURE**
Dismissal
Final Order

**DOMESTIC RELATIONS**
Guardians and Conservators

**JURISDICTION**
Ancillary
District Court
Subject Matter

**STATUTES**
Interpretation

**WILLS, TRUSTS, AND PROBATE**
Administration of Estate
Competence
Personal Representative

Revocation
Testamentary Intent
Trusts, General