# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**Opinion Number: 2023-NMCA-017**

**Filing Date: November 22, 2022**

**No. A-1-CA-38738**

**CITY OF SANTA FE,**

      Petitioner-Appellee,

v.

**ALBERT CATANACH; INFINITE
INTEREST ENT., LLC; and CNSP,
INC. d/b/a NMSURF,**

      Respondents-Appellants.

**APPEAL FROM THE DISTRICT COURT OF SANTA FE COUNTY**
**David K. Thomson and Bryan Biedscheid, District Judges**

Erin K. McSherry, City Attorney
Marcos D. Martinez, Senior Assistant City Attorney
Santa Fe, NM

for Appellee

Catron, Catron & Glassman, P.A.
Richard S. Glassman
Santa Fe, NM

for Appellants

## OPINION

**WRAY, Judge.**

**{1}** In this appeal, we consider whether Petitioner-Appellee the City of Santa Fe (the City) complied with federal laws that govern how local governments handle applications relating to building, modifying, or relocating telecommunications towers. Respondents-Appellants Albert Catanach, Infinite Interests, ENT., LLC, and CNSP, Inc., d/b/a NMSURF (collectively, Applicant) submitted an application to the City related to a telecommunications tower. Nearly a year later, Applicant concluded the request had been "deemed granted" under federal law and so informed the City. The district court

granted the City's subsequent petition for preliminary injunction, denied Applicant's motion to find the request "deemed granted," and denied Applicant's motion to reconsider. We affirm in part, reverse in part, and remand.

## BACKGROUND

**{2}**     The parties' dispute centers on the City's review of a telecommunications facilities request in the context of multiple governing laws, including the City's permitting process; Section 332 of the federal Telecommunications Act, 47 U.S.C. § 332 (Section 332); the Middle Class Tax Relief and Job Creation Act of 2012 (Spectrum Act) § 6409, 47 U.S.C. § 1455 (Section 6409); and the corresponding federal regulations. *See In re Acceleration of Broadband Deployment by Improving Wireless Facilities Siting Policies* (*FCC § 6409 Implementation Order*), 29 FCC Rcd. 12865, ¶¶ 191, 215-16 (Oct. 17, 2014), *erratum* 30 FCC Rcd. 31 (Jan. 5, 2015).[1] Typically, the City applies Section 332 to review telecommunications applications within the presumptively reasonable timeframes promulgated in the Federal Communications Commission (FCC) regulations. *See In re Petition for Declaratory Ruling to Clarify Provisions of § 332(c)(7)(B) to Ensure Timely Siting Review & to Preempt Under § 253 State & Local Ordinances that Classify All Wireless Siting Proposals as Requiring a Variance* (*Reasonable Period of Time Ruling*), 24 FCC Rcd. 13994, ¶¶ 32, 42, 44-45 (Nov. 18, 2009).[2] Applicant, however, invoked Section 6409, which (1) involves an expedited process under federal law and corresponding FCC regulations; and (2) applies to "eligible facilities request[s]," defined as requests to modify an existing telecommunications tower. *See* § 6409(a)(2). If the application was an "eligible facilities request" under Section 6409, FCC regulations require the City to respond to the application and act within 60 days, a far shorter timeframe than the presumptively reasonable timeframes of 90 or 150 days[3] provided for under Section 332. *See* 47 C.F.R. § 1.6100(c)(2) (2021); *Reasonable Period of Time Ruling*, 24 FCC Rcd. 13994, ¶ 4 (discussing Section 332 and defining a reasonable timeframe of 90 days for review of collocation applications and 150 days for review of siting applications). Because the specific provisions of Section 332 (typical process) and Section 6409 (expedited process) are necessary to understand the present case, we begin by briefly describing the applicable federal law.

### The Typical and the Expedited Processes

---

[1] In some publications, the *FCC § 6409 Implementation Order* is referred to by its docket number, "FCC 14-153." *See, e.g., Portland Cellular P'ship v. Inhabitants of Town of Cape Elizabeth*, 139 F. Supp. 3d 479, 491 (D. Me. 2015).

[2] The *Reasonable Period of Time Ruling* is also sometimes referred to by its docket number, "FCC 09-99." *See, e.g., ExteNet Sys., Inc. v. City of Cambridge, Mass.*, 481 F. Supp. 3d 41 (D. Mass 2020).

[3] The presumptively reasonable timeframes for local government action in both Section 332 (90 or 150 days) and Section 6409 (60 days) are both referred to as "shot clocks." *See In re Implementation of State & Local Governments' Obligation to Approve Certain Wireless Facility Modification Requests Under § 6409(A) of the Spectrum Act of 2012 (In re Implementation of § 6409)*, 35 FCC Rcd. 5977, ¶¶ 14-23 (June 10, 2020); *FCC § 6409 Implementation*, 29 FCC Rcd. 12865, ¶¶ 216, 254, 259 (discussing implementation of Section 6409, including clarification of timeframes and "deemed grant" approach).

**{3}** Section 332 sets out what the City has described as the typical process required of local governments when considering telecommunications requests. Section 332 arose from Congress's efforts "to promote competition and higher quality in American telecommunications services and to encourage the rapid deployment of new telecommunications technologies." *City of Rancho Palos Verdes, Cal. v. Abrams*, 544 U.S. 113, 115 (2005) (internal quotation marks and citation omitted). In order to meet these goals, Congress imposed "specific limitations on the traditional authority of state and local governments to regulate the location, construction, and modification" of wireless communication facilities, including timeframes for the local decision making process. *Id.* at 115-16. In relevant part, Section 332 states,

> (ii) A [s]tate or local government or instrumentality thereof shall act on any request for authorization to place, construct, or modify personal wireless service facilities within a *reasonable period of time* after the request is duly filed with such government or instrumentality, taking into account the nature and scope of such request.

> (iii) Any decision by a [s]tate or local government or instrumentality thereof to deny a request to place, construct, or modify personal wireless service facilities shall be in writing and supported by substantial evidence contained in a written record.

Section 332(c)(7)(B)(ii), (iii) (emphasis added). It is well established that Section 332 does not prevent a local government from requiring an applicant to comply with local ordinances, regulations, and procedures, provided that local law comports with the Section 332 shot clock and other requirements. *See Nextel Partners of Upstate N.Y., Inc. v. Town of Canaan*, 62 F. Supp. 2d 691, 695 (N.D. N.Y. 1999) ("[Section 332] establishes the procedural requirements that local boards must comply with in evaluating cell site applications, but the statute does not affect or encroach upon the substantive standards to be applied under established principles of state and local law." (internal quotation marks and citation omitted)). The "reasonable period of time" under Section 332(c)(7)(B)(ii) for local governments to respond to requests is presumptively 90 or 150 days, depending on the type of request. *See Reasonable Period of Time Ruling*, 24 FCC Rcd. 13994, ¶¶ 32, 42, 44-45. That shot clock can be extended if the local government determines a Section 332 application is incomplete and the government notifies the applicant within 30 days that it needs additional information. Under those circumstances, "the time it takes for an applicant to respond to a request for additional information will not count" toward the 90- or 150-day presumptively reasonable period of time for the local government to respond. *Reasonable Period of Time Ruling*, 24 FCC Rcd. 13994, ¶ 53. In order for the shot clock to toll, a local government's "request for additional information must specify the code provision, ordinance, application instruction, or otherwise publicly-stated procedures that require the information to be submitted." *FCC § 6409 Implementation Order*, 29 FCC Rcd. 12865, ¶ 260. Accounting for any tolling, "[a]ny person adversely affected by any final action or failure to act by a [s]tate or local government or any instrumentality thereof that

is inconsistent with [Section 332(c)(7)(B)], within 30 days after such action or failure to act, commence an action in any court of competent jurisdiction." Section 332(c)(7)(B)(v).

{4}      Some applications governed by Section 332 also fall within the purview of Section 6409. As we have noted, Section 6409 requires local governments to engage in an expedited review process of eligible facilities requests and act within 60 days on applications "for [a] modification of an existing wireless tower or base station." Section 6409(a)(2). Modifications of towers, within the context of the Section 6409 expedited process, include removal, replacement, and collocation[4] of equipment. *See id.* If the modifications sought do not substantially change the physical dimensions of the tower, notwithstanding other law, the local government "may not deny, and shall approve" the eligible facilities request. Section 6409(a)(1); *see* 47 C.F.R. § 1.6100(c)(2) ("Within 60 days of the date on which an applicant submits a request seeking approval under this section, the . . . local government shall approve the application unless it determines that the application is not covered by this section.").

{5}      If the local government takes no action "to approve or deny a request seeking approval under this section within the timeframe for review (accounting for any tolling), the request shall be deemed granted." 47 C.F.R. § 1.6100(c)(4). "The deemed grant does not become effective until the applicant notifies the applicable reviewing authority in writing after the review period has expired." *Id.* Importantly, the FCC adopted these regulations for Section 6409, but explicitly rejected the "deemed granted" remedy for Section 332 violations. *See FCC § 6409 Implementation Order*, 29 FCC Rcd. 12865, ¶¶ 281-84, 289; *see also Reasonable Period of Time Ruling*, 24 FCC Rcd. 13994, ¶ 39. Instead, remedies for Section 332 violations are to be fashioned on a case-specific basis. *Reasonable Period of Time Ruling*, 24 FCC Rcd. 13994, ¶ 39; *see also FCC § 6409 Implementation Order*, 29 FCC Rcd. 12865, ¶¶ 281-84.

{6}      With this for context, we return to the facts of the present case.

**The Approval Requests and Responses**

{7}      On April 9, 2015, Applicant sent an "application letter" to the City's land use department, specifically the land use director. Applicant requested to

> collocate two towers on its building at [an address in Santa Fe, New Mexico] approximately [thirty] feet south of the building on to one tower located on the ground. This does not constitute a new tower; however, a new tower would need to be built to collocate and consolidate the existing two towers. These towers were approved by the [C]ity respectively in 2005 and 2010.

---

[4]Throughout this litigation, Applicant has relied on the term "collocation," which refers to placing additional transmission equipment on an existing tower or base. *See* 47 C.F.R. § 1.6100(b)(2).

Attaching the relevant federal regulations to the letter, Applicant sought approval under Section 6409 and its expedited 60-day shot clock.

**{8}**    The City's senior land planner, Daniel Esquibel, responded by letter nineteen days later on April 28, 2015 (Esquibel Letter). In relevant part, the Esquibel Letter stated:

> Your packet identified a request to construct an 80 foot high tower on the property to the rear of the existing building. The proposed new tower is to replace the existing two towers that extend through the roof of the existing building. [Santa Fe, N.M., Code §] 14-6.2(E)(5) "*General Requirements*" state that "*all towers shall be set back a distance equal to at least* [*100*] *percent of the height of the tower from any adjoining lot line, measured from the base of the tower.*" The tower setbacks proposed identified setbacks are less than [100] percent of the tower height (+/-16.8 feet from the rear property line, +/- 37.8 [feet] from the north property line and +/- 47 feet from the south property line).
>
> In order to obtain[] the proposed setback requests a waiver must be approved by the Planning Commission. This also shifts the authority of review pursuant to [Section] 14-6.2(E)(3) to the Planning Commission.
>
> Please contact [a named individual at a particular phone number] to set up a pre-application conference to discuss application submittals and fees, Early Neighborhood notification, and Planning Commission review process.
>
> If you have any questions regarding this matter, please do not hesitate to contact me[.]

In response, on May 26, 2015, Applicant sent another letter, which attempted to clarify that the request was "for permission to relocate certain equipment from one or more towers on the roof of his building to a single similar tower on a nearby spot on the ground." Applicant requested that the City reevaluate its determination that "the entire approval process" was necessary and noted the City's previous setback variance approval for the rooftop towers.

**{9}**    In September 2015, the parties planned to meet to discuss the tower and, specifically, Applicant's ongoing argument that Section 6409 applied to the application. Following the meeting, the City sent Applicant a letter that explicitly rejected Applicant's position that the tower project was "eligible" for review under Section 6409. Seventy-one days later, on January 22, 2016, Applicant sent a new "letter of application for relocation of telecommunications tower" and sought "to remove these 2 towers and construct one (1) replacement tower" on the ground. After three months passed, however, on April 28, 2016, Applicant reversed course. In another letter, Applicant again asserted that Section 6409 applied to the request and disagreed with the City's interpretation of Section 6409.

Applicant additionally contended that the City had also failed to comply with Section 332. The April 28, 2016 letter informed the City that the Applicant now deemed the original application granted under Section 6409 and would proceed with construction.

> [Applicant] deems the application submitted to [the land use director], via Certified Mail and by email on April 9th, 2015, GRANTED in accordance with Section 6409a. Therefore, since there were no other objections to the application, other than the set back issue, my client will proceed forward with the modification of the towers in accordance with the application and plans as submitted.

{10} The City responded a month later and "reject[ed the] letter's conclusion that the application has been deemed granted." Applicant nevertheless built the tower, which we will refer to as "the ground tower."

**The Petition for Injunction, Removal, and Remand**

{11} The City red-tagged the ground tower and on July 14, 2016, filed a request for a temporary restraining order, preliminary injunction, and permanent injunction in the First Judicial District Court. Applicant removed the case to federal court and filed an answer that included affirmative defenses and two counterclaims. One counterclaim alleged that the City substantively did not comply with Section 332 (Counterclaim One). The other counterclaim (Counterclaim Two) first alleged that the City failed to meet the Section 6409 60-day expedited timeline and, alternatively, if the City had correctly decided that Section 6409 did not apply to the request, the City was then obligated to resolve the request within the 90- or 150-day timeframe under Section 332 and had failed to do so. The federal court remanded the case back to state district court without addressing the merits. The City filed an answer to the counterclaims in state district court and asserted that Applicant had been informed about the necessary steps to obtain the permit under the City's ordinances and that Applicant caused any delay. In addition, the City pleaded as an affirmative defense that Applicant's counterclaims had "failed to state a cause of action on legal grounds" because Applicant "started (and then deliberately abandoned) an attempt to receive city approval."

{12} The district court held a hearing, granted the City's petition for a preliminary injunction, and enjoined any additional work on the ground tower during the pendency of these proceedings. Soon afterward, Applicant filed a motion for summary judgment and argued that the City had violated both Section 6409 and Section 332. Applicant also sought a stay of the preliminary injunction in order to allow Applicant to move certain antennas from the roof to the ground tower. On March 30, 2017, the district court denied Applicant's summary judgment motion and the request for stay.

**The "Deemed Grant" Summary Judgment Motion**

{13} In 2018, the parties brought two separate motions to district court for decision: (1) the City's motion challenging a second "deemed grant" letter sent by Applicant relating

to the roof antennas and asking the court to prohibit the installation; and (2) Applicant's renewed motion for summary judgment, which relied solely on Section 6409 and the ground tower. Despite the different factual bases for the motions, as we will explain, the district court treated the motions as cross-motions and granted the City's motion and denied Applicant's renewed motion. To understand the issues before us on appeal, it is necessary to appreciate the way the parties framed the issues for the district court.

{14}  Though Applicant's renewed summary judgment motion was limited to the application of Section 6409 to the ground tower, the City's response addressed Section 332 and offered an explanation for how Section 332 works, characterizing Section 6409 as an expedited Section 332 process. According to the City, because the Esquibel Letter was sent within the Section 6409 timeframes, the letter qualified as a proper and timely denial of Applicant's request under *both* Section 332 and Section 6409. In reply, Applicant disagreed with the City's characterization of Section 6409 and stated that "[a]s a matter of law, Section 6409 governed the [a]pplication to the exclusion of Section 332." Applicant argued that (1) Section 6409 "stands apart" from Section 332; (2) Section 6409 applied notwithstanding Section 332; and (3) the City failed to comply with Section 6409. Applicant additionally maintained that even if Section 332 applied, the Esquibel Letter was an insufficient denial under Section 332, and the City had failed to act in "a reasonable amount of time."

{15}  At the hearing on both parties' summary judgment motions, the district court asked the parties whether the "deemed granted analysis" under Section 6409 would "dispose of whether [Applicant] is entitled to put any kind of tower on that building;" and if the court's ruling on the two pending summary judgment motions would "dispose of the case." Specifically, the district court inquired whether other reasons, apart from the deemed grant issue under Section 6409, could justify lifting the injunction to either allow the tower construction or the placement of antennas. Applicant stated that while the motions were about different pieces of equipment (the ground tower and antennas), the motions could be addressed at the same time because they involved the same statute and legal question. The City acknowledged that if the Esquibel Letter "is insufficient, then [Applicant] has strong grounds to say that he can invoke deemed granted" under Section 6409. In response, Applicant reiterated the argument that the Esquibel Letter was insufficient under Section 6409 because it did not "even come close" to stating whether the request was covered by Section 6409 nor was it a "final letter" that would give Applicant grounds to invoke any appellate process.

{16}  The district court granted the City's motion to prohibit placement of antennas and denied Applicant's motion. The district court found as follows:

> Applying the applicable rules, the April 9, 2015 letter by [Applicant] to the City regarding the plans to build a new tower in which the current equipment would be transferred from the existing two towers to the new, higher tower located in a different location on the ground, cannot be read as anything other than a request to build a new tower. It is not a modification to an existing tower, it is a new tower.

As a result of this finding, the district court determined that the Esquibel Letter, "could have been more clearly written, but the intent of the letter was to notify [Applicant] that the tower proposed is a new tower, it does not meet the setback requirements and [Applicant's] request must go through the application process." Continuing, the district court concluded, "[h]ad the City stamped the word 'denied,' it would have resolved sooner the questions litigated in this lawsuit, but a plain reading of the letter makes clear that the application to build a new tower is not a modification and needs to comply with the rules for new towers."[5]

**{17}** Applicant filed a motion to reconsider. The motion raised multiple issues, but in relevant part challenged the district court's failure to address Section 332. At the hearing on the motion to reconsider, Applicant argued that the district court's ruling that the Esquibel Letter communicated noncoverage under Section 6409 was wrong as a matter of law and that even if the Esquibel Letter was a sufficient notice of noncoverage, the City was then obligated to review the request under Section 332. When the district court asked whether a single letter could indicate that the request was not covered by Section 6409 and also deny the request under Section 332, Applicant declared that it would "bogle[] the mind" that the Esquibel Letter could be both given that it did not reference either statute. Applicant maintained the position that the City was required to provide clear notice of its decision that Section 6409 did not cover the request, and the City was then required to consider the request under Section 332.

**{18}** The City, in response, characterized the district court's original order as establishing that "this [was] not an eligible facilities request [under Section 6409] because it wasn't an existing tower" and that the law did not require the City to issue a notice that Section 6409 did not apply. Regarding Section 332, the City argued that Applicant had elected to proceed under Section 6409, the Esquibel Letter was also a denial under Section 332, and Applicant could have sought judicial review of any Section 332 denial. The district court denied the motion to reconsider. Applicant appealed.

## DISCUSSION

**{19}** On appeal, Applicant contends that the ground tower application should have been "deemed granted" under Section 6409 because the City failed to appropriately respond within 60 days of the request, and a permit should otherwise issue because the City failed to comply with the procedural requirements of Section 332. We review de novo both issues of statutory construction and summary judgment rulings. *See State Pub. Educ. Dep't v. Zuni Pub. Sch. Dist.*, 2018-NMSC-029, ¶ 17, 458 P.3d 362.

## I.     Our Appellate Jurisdiction

---

[5]The district court did not separately analyze the City's summary judgment motion relating to the antennas, and we therefore do not reach the issues concerning the placement of antennas on the ground tower.

**{20}**    We begin our discussion by raising and resolving the question of this Court's jurisdiction. *See Smith v. City of Santa Fe*, 2007-NMSC-055, ¶ 10, 142 N.M. 786, 171 P.3d 300 ("[I]t is incumbent upon the appellate court to raise jurisdiction questions sua sponte when the Court notices them."). As we have explained, Applicant brought two counterclaims: Counterclaim One, relating to the substance of Section 332 and Counterclaim Two, invoking Section 6409. Applicant voluntarily dismissed Counterclaim One but maintained Counterclaim Two, which included—in addition to his Section 6409 invocation—an allegation that, in the alternative, the City failed to comply with Section 332's procedural timeframes. The district court's summary judgment and reconsideration orders do not explicitly dismiss Counterclaim Two or refer to the portion of that counterclaim that argued the City had failed to comply with Section 332. We therefore must consider whether the district court's orders resolved Counterclaim Two so that the orders are final and properly before us. *See* Rule 1-054(B) NMRA ("If an action presents more than one claim for relief, whether as a claim, counterclaim, cross[-]claim, or third-party claim, . . . the court may direct entry of a final judgment about one or more, but fewer than all, claims or parties, only if the court expressly finds no just reason for delay."); *see also Clinesmith v. Temmerman*, 2013-NMCA-024, ¶ 35, 298 P.3d 458 ("The general rule in New Mexico for determining the finality of a judgment is that an order or judgment is not considered final unless all issues of law and fact have been determined and the case disposed of by the trial court to the fullest extent possible." (internal quotation marks and citation omitted)).

**{21}**    As we have explained, the City framed the Section 6409 issue as a subset of Section 332 analysis and suggested that the Esquibel Letter satisfied its obligations under both Section 332 and Section 6409. Applicant maintained that the two laws were completely separate and the City had separate obligations under each. In the order granting summary judgment, the district court concluded that Section 6409 did not apply, and as a result, Applicant "must proceed to follow the application process for a new tower." The district court ordered that "the injunction will remain in place until [Applicant] applies for and obtains the proper building permit" and that the "case is dismissed." Based on our review of the proceedings, as set forth in preceding paragraphs, we conclude that the district court adopted the City's view that compliance with Section 6409 also included and satisfied the City's Section 332 obligations. We will address the substance of the district court's ruling shortly, but for the purposes of finality, the district court resolved all issues of law and fact and fully disposed the case. *See Clinesmith*, 2013-NMCA-024, ¶ 35 (explaining that the general rule of finality "is not inflexible" and "is to be given a practical, rather than a technical, construction" (internal quotation marks and citation omitted)). We therefore turn to the merits of the appeal.

## II.    The Application of "Deemed Granted" Under Section 6409

**{22}**    Applicant argues that the 60-day shot clock expired under Section 6409 because the Esquibel Letter (1) resulted in "a failure to act under Section 6409" and 47 C.F.R. § 1.6100(c)(4); and (2) was not a final appealable determination.[6] The City argues that

---

6Applicant additionally argues that the Esquibel Letter did not toll the Section 6409 shot clock. Because the City does not rely on tolling, we do not engage in a tolling analysis.

the Esquibel Letter communicated to Applicant that Section 6409 did not apply because in the City's view, the application was for a new tower. We agree with the City that the Esquibel Letter adequately communicated to Applicant the City's position that Section 6409 did not cover the request. *See* 47 C.F.R. § 1.6100(c)(2) (requiring a locality to approve an application within 60 days unless "the application is not covered by this section"). We further conclude that the Esquibel Letter was sufficiently reviewable under Section 6409. Having communicated its decision that Section 6409 did not apply with a sufficiently reviewable letter within 60 days, we hold that the City complied with the Section 6409 shot clock. To explain these conclusions, we return to the language of Section 6409 and its implementing regulations.

## A.     The Esquibel Letter Was a Notice That Section 6409 Would Not Apply

{23}    The expedited process set forth in Section 6409 applies to "any eligible facilities request for a modification of an existing wireless tower." Section 6409(a)(1). An "existing" wireless tower is defined by the regulation: "A constructed tower or base station is existing for purposes of this section if it has been reviewed and approved under the applicable zoning or siting process, or under another [s]tate or local regulatory review process." 47 C.F.R. § 1.6100(b)(5). Thus, Section 6409 applies only to eligible facilities requests for existing wireless towers.

{24}    In the request, Applicant stated, "This *does not constitute a new tower; however, a new tower would need to be built* to collocate and consolidate the existing two towers." (Emphasis added.) The request included explicit references to Section 6409 and provided copies of the regulations. Despite having noted that a new tower would need to be built, Applicant averred, "[A]s these are existing towers and we are simply collocating them to a different location" the normal process pursuant to the ordinance would not apply.

{25}    In response, the Esquibel Letter stated the City's position that the author had "reviewed the information provided" and notified Applicant that (1) "[t]he proposed new tower" would replace the existing two towers; and (2) Applicant would be required to comply with setback requirements and obtain a variance. The Esquibel Letter describes the setback requirements under the City's ordinances, explains that the proposed setback requires a waiver approved by the Planning Commission, and indicates that "[t]his also shifts the authority of review pursuant to [Section] 14-6.2(E)(3) to the Planning Commission." In the context of these communications, the Esquibel Letter communicated to Applicant that Section 6409, which Applicant invoked and provided for the City's consideration, did not apply to what the City determined to be a "new tower."

{26}    Applicant contends that the Esquibel Letter was not a determination under Section 6409 because (1) the letter "did not mention or show awareness of Section 6409" or request more information; (2) the letter looks like a "standard land use letter;" and (3) Esquibel did not later characterize the letter as a Section 6409 determination. For these reasons, Applicant argues that the City made no determination at all under Section 6409. This argument disregards the May 26, 2015 letter that Applicant sent in

response to the Esquibel Letter. In the response letter, Applicant disputed the City's assertion that Applicant must "go through the entire approval process to relocate his tower in the same manner as if approval for such a structure had never been granted to him." Despite the deficiencies in the Esquibel Letter identified by Applicant on appeal, Applicant's letter sent in response to the Esquibel Letter demonstrates that Applicant understood that the City was refusing to apply the Section 6409 expedited process. Having concluded that the Esquibel Letter was notice to Applicant that Section 6409 would not apply, we next consider the reviewability of the Esquibel Letter.

**B.      The Esquibel Letter Was Reviewable as a Claim Related to Section 6409**

**{27}**    Applicant maintains that the deemed grant determination was appropriate because the Esquibel Letter was not a "final, appealable action" and instead sent the request "into some kind of legal purgatory." None of Applicant's arguments, however, acknowledge the limited finality requirements set forth in the Section 6409 corresponding regulations. Specifically, the "remedies" provision of 47 C.F.R. § 1.6100(c)(5) states that "[a]pplicants and reviewing authorities may bring claims related to Section 6409(a) to any court of competent jurisdiction." In *FCC § 6409 Implementation Order*, the FCC explained that appeals or claims related to Section 6409 "would appear likely to fall into one of three categories." 29 FCC Rcd. 12865, ¶ 236.

> First, if the [s]tate or local authority has denied the application, an applicant might seek to challenge that denial. Second, if an applicant invokes its deemed grant right after the requisite period of [s]tate or local authority inaction, that reviewing authority might seek to challenge the deemed grant. Third, an applicant whose application has been deemed granted might seek some form of judicial imprimatur for the grant by filing a request for declaratory judgment or other relief that a court may find appropriate.

*Id.* Section 6409 does not appear to require a "final order" or "final determination"—just a denial, a grant, or a "deemed grant."[7]

**{28}**    In the present case, as we have already determined, the Esquibel Letter was a sufficient notice of noncoverage (or denial), which effectively communicated that the City would not apply Section 6409. Applicant nevertheless contends that because the City's pleadings stated no final order had issued and the letter could not be appealed under the City's code, the Esquibel Letter was not a sufficient notice of noncoverage. While the Esquibel Letter might not permit an administrative appeal under the City's

_____

[7]We note that in the motion to reconsider, Applicant took umbrage with the district court's observation that had the City stamped "denied" on Applicant's request letter, the matter would have been resolved sooner. Applicant argued that the district court's order must have been referencing Section 332, "because you can't deny in [Section] 6409" and the order was "really confusing." The FCC, however, also has used the term "denial" when referring to a notice of noncoverage under Section 6409. Therefore, while we understand Applicant's position on the matter, we purposefully use the term "denial" in accordance with the FCC's guidance.

code, the letter could support a claim in any "court of competent jurisdiction" because the letter is "related to Section 6409(a)." *See* 47 C.F.R. § 1.6100(c)(5). We are therefore unpersuaded by Applicant's argument that the Esquibel Letter was insufficiently final or unreviewable and affirm the district court's ruling in this regard.

### III. The Application of Section 332

**{29}** Applicant last argues that the City failed to comply with Section 332(c)(7)'s procedural requirements.[8] Specifically, Applicant contends that the City did not issue a final, appealable, written denial under Section 332, "supported by substantial evidence contained in a written record." Section 332(c)(7)(B)(iii). As a remedy for these alleged deficiencies, Applicant seeks the issuance of the permit for the ground tower. The City contends that Applicant failed to timely appeal Section 332 issues, and regardless of the appeal's timeliness, the Esquibel Letter was sufficient to satisfy the procedural requirements of Section 332(c)(7). In reply, Applicant claims that the City waived any argument that the Section 332 appeal is untimely by failing to plead such a defense in the answer to Applicant's counterclaims.

**{30}** We set out the parties' appellate arguments to highlight the narrow decision the district court made in this case and the resulting narrow window for our review. Generally, our review is limited to whether the appellant meets the burden to demonstrate error by the district court. *See Farmers, Inc. v. Dal Mach. & Fabricating, Inc.*, 1990-NMSC-100, ¶ 8, 111 N.M. 6, 800 P.2d 1063 ("[The a]ppellant must affirmatively demonstrate its assertion of error."). In the present case, the district court decided that the City complied with Section 6409 and Applicant had to obtain a permit. As we have explained, we understand the district court's determination to rest on a legal conclusion that the City's compliance with Section 6409 and its timeframes also satisfied the requirements of Section 332. We disagree with that legal conclusion because the two procedures are separate under the applicable law. As we explain below, Applicant is entitled to a ruling on the Section 332 claim.

**{31}** Section 6409(a)(1) begins by stating, in general, "[n]otwithstanding [S]ection [332] or any other provision of law, a [s]tate or local government may not deny, and shall approve, any eligible facilities request for a modification of an existing wireless tower or base station that does not substantially change the physical dimensions of such tower or base station." The FCC has explained that when both Section 6409 and Section 332 apply, "if the reviewing [s]tate or municipality finds that Section 6409(a) does not apply (because, for example, it proposes a substantial change), we provide that the presumptively reasonable timeframe under Section 332(c)(7) will start to run from the issuance of the [s]tate's or municipality's decision that Section 6409(a) does not apply." *FCC § 6409 Implementation Order*, 29 FCC Rcd. 12865, ¶ 220. The government may seek additional information to evaluate an application under Section

---

[8]Applicant solely challenges the Esquibel Letter's adherence to the procedural aspects of Section 332 and does not appear to challenge or argue that even if the Esquibel Letter was procedurally sufficient under Section 332(c)(7), the letter was substantively incorrect. Such a contention formed the basis for Applicant's Counterclaim One, which was dismissed by stipulation and therefore is not before us.

332, "subject to the same limitations applicable to other Section 332(c)(7) reviews." *FCC § 6409 Implementation Order*, 29 FCC Rcd. 12865, ¶ 220. Thus, when the City sent the Esquibel Letter notifying Applicant of noncoverage, the matter reverted to a Section 332 determination, and the associated timeframes and requirements began to run.

**{32}** Viewing the proceedings as a whole, we conclude that the district court conflated the Section 6409 determination with the necessary Section 332 determination. We must therefore remand for further proceedings to allow the district court to consider and resolve the Section 332 arguments that the parties have raised on appeal.

**CONCLUSION**

**{33}** We hold that the district court properly denied Applicant's "deemed granted" motion as it pertains to Section 6409 and affirm the district court on that issue. We remand to allow the district court to resolve in the first instance the issues raised by the parties on appeal concerning the City's compliance with Section 332 procedures.

**{34}** We therefore affirm in part, reverse in part, and remand for further proceedings.

**{35} IT IS SO ORDERED.**

**KATHERINE A. WRAY, Judge**

**WE CONCUR:**

**MEGAN P. DUFFY, Judge**

**JANE B. YOHALEM, Judge**